624 A.2d 867 (1993)
In re A.F., B.F., and C.F., Juveniles.
No. 91-226.
Supreme Court of Vermont.
March 19, 1993.
*868 Jeffrey L. Amestoy, Atty. Gen., Montpelier, Barbara L. Crippen, Asst. Atty. Gen., and Harrison B. Lebowitz, Special Asst. Atty. Gen., Waterbury, for plaintiff-appellee.
Charles S. Martin of Martin & Paolini, Barre, for defendant-appellant.
Before ALLEN, C.J., and GIBSON, DOOLEY and JOHNSON, JJ.
JOHNSON, Justice.
The mother of three juveniles appeals from the family court's order granting the petition of the Commissioner of Social and Rehabilitation Services (SRS) to terminate residual parental rights. Appellant argues that (1) numerous findings and conclusions are unsupported by the record, (2) certain crucial findings and conclusions are based solely on hearsay, and (3) the finding of changed circumstances was not supported by clear and convincing evidence. We affirm.
The three boys, C.F., A.F. and B.F., were born in July 1981, December 1982 and June 1985, respectively. SRS's involvement with the family dates back to 1984, when it opened a voluntary protective services case in response to substantiated reports of abuse and neglect of the children. In April 1988, SRS took custody of the children at the request of appellant, who was unable to protect them from the father. The children were found to be in need of care and supervision, and the family court transferred legal guardianship and custody to SRS at the disposition hearing in July 1988. Residual rights remained with the parents, with an ultimate goal of reunification. The court ordered that the children be placed outside the home in a structured and safe environment, the father obtain substance abuse evaluation, the mother participate in mental health counseling, and both parents participate in a family assessment regarding past abuse and the potential to resume parenting responsibilities.
SRS changed its case goal from reunification to termination of parental rights at the twelve-month review. The Department sought termination of parental rights because it believed, based on information received from caseworkers and other professionals offering services in the case, that the children needed stability and a permanent home, and that appellant would not be able to provide either in the foreseeable future, if ever. The eight-day termination hearing took place between August and December of 1990. The court concluded that the mother had made only minimal progress toward reunification, and that *869 there was no reasonable possibility that she would be able to resume her parental duties in the near future. The present appeal ensued.
Before terminating parental rights in a modification hearing, the court must find that there has been a substantial change in material circumstances since the disposition order, and that termination is in the best interest of the children. In re S.R., 157 Vt. 417, 420, 599 A.2d 364, 366 (1991). A substantial change in material circumstances is "most often found when the parent's ability to care properly for the child[ren] has either stagnated or deteriorated." In re H.A., 153 Vt. 504, 515, 572 A.2d 884, 890 (1990). In determining the best interests of the children, the court must consider (1) the children's interaction with the natural parents, foster parents, siblings, and other persons who may significantly affect their lives; (2) the children's adjustment to their home, school and community; (3) the likelihood that the natural parent will be able to resume parental duties within a reasonable period of time; and (4) whether the parent continues to play a constructive role in the children's welfare. 33 V.S.A. § 5540. The third criterion is the most critical factor. In re J.R., 153 Vt. 85, 100, 570 A.2d 154, 161 (1989).
The court's conclusion that a parent will be unlikely to resume her parental duties must be supported by clear and convincing evidence. In re H.A., 153 Vt. at 513, 572 A.2d at 889. Individual findings of fact will stand unless clearly erroneous, and conclusions of law will be upheld if supported by the findings. Id. at 515, 572 A.2d at 891. When findings are attacked on appeal, our role is limited to determining whether they are supported by credible evidence. See In re B.B., 155 Vt. 365, 368-69, 584 A.2d 1126, 1128 (1990); In re C.L., 151 Vt. 480, 484, 563 A.2d 241, 244 (1989). We leave it to the sound discretion of the family court to determine the credibility of the witnesses and to weigh the evidence. See In re B.B., 155 Vt. at 369, 584 A.2d at 1128.
Appellant first argues that fourteen findings and five conclusions made by the court are not supported by evidence. The principal findings objected to are that (1) the mother's physical disabilitiescerebral palsy and epilepsywould impair her ability to work and to parent; (2) she suffers from a dependent personality disorder; (3) she failed to make substantial progress in working toward reunification despite support from SRS and other agencies; (4) she has persistently denied any role in the abuse and neglect of her children; (5) she is detached from her children and is unable to put their needs before her own; (6) her behavior toward the children during visits has not changed over a long period of time; (7) reunification with C.F., who has ambivalent feelings concerning his mother, would exacerbate his confusions and his tendency toward a quasi-spousal relationship with her; and (8) it will take several years for her to reach a point where she can reasonably care for her children. The challenged conclusions stem from these findings.
Our review of the record reveals support for all of the challenged findings and conclusions except for the court's finding that the mother's physical disabilitiescerebral palsy and epilepsyimpair her ability to function as a mother and an employee. The mother's testimony regarding her physical disabilities indicated that those disabilities have affected her ability to work but did not suggest the disabilities have impaired her ability to parent. The deletion of this finding and that portion of the conclusions based on the finding do not alter the court's conclusion. The remainder of the court's findings, which are supported by the record, are sufficient to sustain the decision to terminate the mother's parental rights, as a matter of law. See In re C.M., 157 Vt. 100, 103, 595 A.2d 293, 294-95 (1991) (citing cases for proposition that erroneous finding does not require reversal where other evidence supported termination of parental rights or ruling that children were in need of protection).
The court's finding that the mother has minimized her role in the children's abuse is well supported by the evidence. The father was responsible for most of the abuse within the family, both physical and *870 sexual. Nevertheless, there was credible evidence that the mother had physically abused her children and had been unable to prevent the sexual abuse of them. A relative, who was a frequent visitor to the household, testified that he had seen both parents physically abuse the children, and there was further evidence of specific incidents of abuse and neglect by the mother. Despite this evidence, various social workers and therapists testified that the mother either refused to acknowledge, or down-played, her role in the neglect and abuse of her children.
There is also credible evidence in the record supporting the court's findings regarding the mother's behavioral problems, her dependency on others, and her inability to understand or cope with her children's extraordinary needs. Several expert witnesses acknowledged that appellant had made some progress in coping with her own life by divorcing her husband and obtaining a driver's license, but most of them agreed that these strides did not indicate that she would be able to resume parental duties in the near future.
Appellant contends that she was never given a chance to follow through on the plan for reunification, and that the court improperly relied on evidence of her behavior prior to the time SRS took custody of her children in 1988 to support its conclusion that she had not followed through on the reunification plan. While it is true that the court noted appellant's failure to take advantage of services provided or arranged by SRS since 1984, the record discloses that appellant did not successfully participate in various programs from the time SRS assumed custody of the children until the termination hearing. SRS took custody of the children in April 1988. An evaluation to determine the mother's parenting capacity was not completed until November 1988 because the parents missed a number of appointments. The evaluation concluded that the long-term prognosis for reunification was "extremely guarded," and recommended that, before a reunification plan could be implemented, the mother, among other things, would have to attend a variety of therapies, including individual counseling and parenting classes. The evaluation concluded that progress in parenting skills and interpersonal growth should be apparent in three to six months, and that failure to demonstrate progress in those areas during that time would suggest that she is not capable of meeting her children's complex emotional needs.
Although appellant attended twenty-three therapy sessions over a period of four months beginning in December 1988, the therapist concluded that appellant had declined to address or make significant progress regarding the issues and goals that were set for her in the initial evaluation. Further, her attendance at other counseling programs was sporadic, and she gained little from them. Thus, the court's conclusion that she had not followed through on the reunification plan was supported by the findings.
Appellant claims, however, that her lack of progress in therapy was the result of her inability to develop a rapport with the therapist because of the presence of the case social worker. Further, she states that she missed meetings in the other programs because of transportation problems or because she felt out of place at parenting meetings without her children. There was scant evidence, however, indicating that her difficulties in successfully completing the programs were brought to the attention of SRS early on or were the result of a lack of support from SRS. The record does not support her contention that she was not given the opportunity to follow through on the reunification plan.
Appellant points out that she made progress with another therapist that she began seeing in April 1989. She further points out that in August 1989 this therapist recommended, in conjunction with the children's therapists, that SRS postpone its decision to terminate the mother's parental rights for another six months. There was countervailing evidence, however. A follow-up evaluation of appellant in December 1989 by the clinical social worker who prepared the initial evaluation, and a psychiatric evaluation in May 1990, both concluded that appellant had not made sufficient *871 progress to indicate that she would be able to resume parental duties within the near future, if ever. It was the court's prerogative to weigh the evidence. We conclude that its findings and conclusions are supported by the record.
Appellant next argues that only hearsay evidence supports the court's finding that she failed to avail herself of services provided or arranged by SRS after it took custody of the children, and that without such a finding termination could not be justified. Hearsay evidence is admissible in termination proceedings as long as it is not the sole basis for termination of parental rights. In re C.L., 151 Vt. at 486-88, 563 A.2d at 246-47. That was not the case here. Our review of the record reveals that there was nonhearsay testimony that defendant did not satisfactorily avail herself of services provided or arranged by SRS. Indeed, as noted, appellant does not deny that her attendance at some of the programs was inconsistent or that her initial therapy was unsuccessful. The court's decision to terminate parental rights was based on extensive nonhearsay evidence, including the testimony of approximately fifteen witnesses.
Finally, appellant argues that because she had made some progress in her parenting skills between the time of the disposition order and the termination hearing, one of the prerequisites for termination of parental rightsa substantial change of material circumstancesdid not exist. We conclude that clear and convincing evidence in the record demonstrates a substantial change in material circumstances, thereby justifying termination of parental rights.
As noted, a substantial change in material circumstances is most often shown by demonstrating that the parent's ability to care for the child has not improved over time. In re J.R., 153 Vt. at 99, 570 A.2d at 161. But the mere fact that a parent has shown some progress in some aspects of his or her life does not preclude a finding of changed circumstances warranting modification of a previous disposition order. See In re M.M., ___ Vt. ___, ___, 621 A.2d 1276, 1280 (1993) (though mother had made some progress toward reunification, finding of changed circumstances was upheld where mother had made insufficient progress in parenting skills, and her ability to act independently was many months away); In re J.J., 143 Vt. 1, 5-6, 458 A.2d 1129, 1131-32 (1983) (though trial court found that father had made a "marked improvement" in turning his life around by temporarily stopping a drinking habit and seeking counseling, termination of parental rights was justified where evidence supported court's conclusion that there was no likelihood he would be able to resume parental duties within a reasonable period of time); In re E.G., 139 Vt. 171, 174, 423 A.2d 1197, 1198-99 (1980) (though mother's argument that she has shown some improvement in coping with her problems has "great force," it is counterbalanced by expert opinion that this improvement will not result in her ability to parent her child within a reasonably foreseeable time).
Here, the mother's therapist testified that the mother had made substantial progress in understanding her deficiencies and the needs of her children, and that termination was premature. Other expert witnesses, however, including the two witnesses that had written psychological evaluations of appellant, disagreed. While acknowledging progress appellant had made in gaining some control over her own life, they agreed that she had not made substantial progress in acquiring the skills necessary to deal with her children's extraordinary needs. This determination, when considered along with evidence that appellant did not consistently attend or successfully participate in counseling sessions, and that the children were suffering psychologically from the uncertainty over their future, was clear and convincing evidence of a substantial change in material circumstances. Cf. In re J. & J.W., 134 Vt. 480, 484-85, 365 A.2d 521, 524 (1976) (though mother had ceased to be the psychological parent of her children and had not yet demonstrated a readiness to fully provide for the children's extraordinary needs, there was no *872 showing of stagnation where mother had established a stable marital situation, had continued a regular medical treatment program, had become employed in a job that involved supervision of children, had visited the children as often as allowed, and had prepared additional accommodations in her home to allow more extended visits with the children).
Affirmed.