*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2010-428

APRIL TERM, 2011

| | | |
|---|---|---|
| In re K.G. and A.G., Juveniles | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Franklin Unit, |
| | } | Family Division |
| | } | |
| | } | DOCKET NO. 8-2-08/9-2-08 Frjv |

Trial Judge: Mark J. Keller

In the above-entitled cause, the Clerk will enter:

Mother appeals from the family court's order terminating her residual rights in A.G. and K.G. We affirm.

A.G. was born in March 2001; K.G. was born in July 2002. The Department for Children and Families (DCF) became involved with the family in 2002, and the children were taken into DCF custody in February 2008. In April 2008, they were adjudicated as children in need of care or supervision (CHINS). Mother stipulated to most of the facts contained in the affidavit supporting the CHINS petition. In January 2010, DCF moved to terminate mother's rights. Following a hearing, the court granted DCF's request.

In reaching its decision, the court relied on and incorporated the parties' stipulated facts in the CHINS proceeding referenced above. This included the following information. Shortly after K.G. was born, a doctor observed that she was failing to thrive. Following an investigation, DCF substantiated parents as responsible for physical abuse, medical neglect, and risk of harm to the children. A.G. exhibited aggressive behaviors, had frequent and intense tantrums, and was not responding to his caregivers. Additionally, mother left the children home alone when A.G. was three years old and K.G. was eighteen months—the children were observed outside, naked, and heading for the street during a thunderstorm. The children were also very dirty—K.G. had feces caked on the front and back of her body and A.G. was covered in bug bites. The children also had bruises and their living conditions were foul and unsanitary. In 2004, A.G. reported to a daycare worker that his father had hit him. A.G. continued to act in a very aggressive manner. In May 2005, mother reported that K.G. was engaging in sexualized behavior. In March 2007, a school nurse observed that A.G.'s teeth were rotting and that an area on his gums was black. These problems were causing him pain. Mother did not follow up with a dentist appointment for the child. In December 2007, A.G. reported that father had punched him in the mouth. A.G.'s behavior continued to deteriorate. As noted above, a CHINS petition was filed in 2008 and granted by the court.

Pursuant to a May 2008 disposition order and subsequent case plans, mother was required to take certain steps to improve her ability to care for the children. Mother's compliance was sporadic. Mother was expected to demonstrate, for example, that she could keep herself and her children safe and consistently meet the children's needs. Mother was told repeatedly to keep the children away from their father, their maternal grandfather, and their maternal uncle. Each of these individuals had a long history of abusive actions around the children and each was a negative influence on the children. K.G. had also been sexually abused, and mother knew that mother's father and/or brother were the suspected perpetrators. Mother's father also had a history of inappropriate sexual activity, statements, and actions.

Nonetheless, mother was very slow to discontinue her relationship with these individuals. In fact, mother continued to visit her father and brother; the children's father was also discovered in mother's home during an unannounced visit by DCF. Mother was also involved in a relationship with a man who had a history of mental health problems, and another man who had an extensive history of violent and threatening behavior. The court found that, clearly, mother was not committed to a daily routine and relationships that focused on her children and her safety, as required by the case plans. Rather than conform her behavior to the case plan, mother instead began to refuse to disclose the names of men that she was seeing. The court found that mother was unwilling to address her unhealthy relationships or her history of exposing her children to abusive men, and this placed the children at risk for future emotional and physical harm.

The court made numerous additional findings detailing mother's failure to make adequate progress in addressing the case plan requirements, including mother's failure to obtain stable or appropriate housing in a timely fashion; her inability to exclude inappropriate individuals from her home; and her failure to progress to a point where unsupervised visitation with the children was appropriate. The court noted that the children appeared to be doing well in their most recent foster placements. Based on these and other findings, the court concluded that mother had stagnated in her ability to parent, and that there was no likelihood that she would be able to parent within a reasonable period of time. After evaluating all of the statutory best-interest factors, the court concluded that the termination of mother's rights was in the children's best interests. This appeal followed.

On appeal, mother asserts that the court erred in assessing the parent-child bond and analyzing whether she played a constructive role in the children's lives. She suggests the court inappropriately focused on her behavior rather than viewing these factors from the perspective of the children. She also argues that the court failed to specifically determine whether the severance of the parent-child bond would have a constructive or destructive effect on the children's best interests.

As we have often repeated, the family court must consider four statutory factors to determine if termination of a parent's rights is in a child's best interests. 33 V.S.A. § 5114. The most important factor is the likelihood that the natural parent will be able to resume his or her parental duties within a reasonable period of time. In re B.M., 165 Vt. 331, 336 (1996). As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. In re A.F., 160 Vt. 175, 177-78 (1993).

Mother does not challenge the court's conclusion that she is unable to parent the children within a reasonable period of time. Instead, she focuses on the court's analysis of whether she "has played and continues to play a constructive role, including personal contact and demonstrated emotional support and affection, in the child's welfare." 33 V.S.A. § 5114(a)(4). She also refers to the court's consideration of the "interaction and interrelationship of the child with his or her parents, . . . and any other person who may significantly affect the child's best interests." Id. § 5114(a)(1). The court did not err in evaluating either of these factors. Certainly, the court must consider mother's behavior in its analysis. In this case, as the court found, mother left her young children unsupervised. She exposed them to abusive men. She provided them with a dirty, unsafe home. She failed to secure necessary medical treatment for them. She failed to understand the connection between her choice of companions and her children's safety. While mother loves the children and they her, mother's inability to protect them from abusive men placed the children at risk of future emotional and physical harm. All of these facts, and others, affect the children's best interests, and the court appropriately considered them. The court was not required to make a specific finding regarding the effect that severance of the parent-child bond would have on the children. In any event, it is evident that the court concluded, based on its analysis of the statutory factors, that despite love and affection between the children and mother, the children's best interests required termination of mother's residual parental rights, and thus, legal severance of the parent-child relationship. See In re A.F., 160 Vt. at 178 (observing it is for the family court to weigh the evidence and assesses the credibility of witnesses). The court's decision is amply supported by the record, and we find no error.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice

3