*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-189

DECEMBER TERM, 2012

| | |
|---|---|
| In re A.E., Juvenile | APPEALED FROM: |
| | Superior Court, Rutland Unit, Family Division |
| | DOCKET NO. 17-2-11 Rdjv |
| | Trial Judge: Nancy Corsones |

In the above-entitled cause, the Clerk will enter:

Father appeals from the termination of his parental rights in son A.E.[*] He argues that the court erred in concluding that he would not be able to parent A.E. within a reasonable period of time. We affirm.

A.E. was born in November 2010 with opiates in his system. Parents were heavily addicted to drugs. Between November 2010 and February 2011, the Department for Children and Families (DCF) worked with parents to keep A.E. safe. Parents did not comply with the safety plan, and, in February 2011, DCF filed a petition to have A.E. declared a child in need of care or supervision (CHINS). At the time, DCF contemplated a conditional-care order. Mother did not appear at the preliminary hearing, however, and A.E. was placed in DCF custody. A.E. was later adjudicated CHINS. During this time, DCF worked with father to complete genetic testing and to facilitate visitation with A.E. Father missed two scheduled genetic tests as well as two visits with A.E. In April 2011, father was incarcerated for assaulting mother. Genetic testing was completed in August 2011, and paternity was established in October 2011.

The initial disposition plan, dated July 2011, was a concurrent plan of reunification and adoption. Both parents' case-plan goals were set forth in the disposition report, even though, as of that time, paternity had not yet been established. In August 2011, DCF filed a petition to terminate parental rights. Following an April 2012 hearing, the court granted the request. It made the following findings regarding father. Father was incarcerated in April 2011. He had no contact with A.E. while incarcerated. In January 2012, father was furloughed. While on furlough and following a visit with A.E., father tested positive for cocaine and opiates. He was reincarcerated for five days as a sanction.

The court found that father's participation in his furlough requirements and his compliance with the DCF case-plan was fair to poor. It explained that father failed to complete eight of eleven DCF case plan requirements. He had not had an anger-management assessment

---

[*] The trial court terminated mother's parental rights as well. She has not appealed.

or counseling. He failed to have a substance abuse assessment, or any treatment for substance abuse. Father did not engage the services of the Department of Employment and Training to help him find a job even though DET was located on the same floor in the same building as where he visited the child. He used drugs while on furlough, and he also contacted mother in violation of his furlough conditions. Additionally, father was not fulfilling his work-crew obligations.

The court acknowledged that father had developed a bond with A.E. and that when father was sober and focused on A.E., he interacted mostly positively with him. The court found it evident that father loved A.E. and wanted to parent him. Nonetheless, it continued, A.E. was now seventeen months old. At the time of trial, father had spent fewer than twenty-five hours with A.E. since father was released from jail. All of his visits had been supervised. He had missed one visit and one playgroup date due to being reincarcerated; he missed another visit because he had overslept. Father had also been late for three scheduled visits. Father's living situation was also unsuitable for A.E. as father was living with his mother who was on probation for a felony drug conviction and who was facing new criminal charges as well. The court found that father had repeatedly minimized his criminal involvement, his addiction, and his need for treatment. Given this, the court had no confidence that father would be able to assume parental responsibilities in the foreseeable future.

The court found that A.E. was doing very well in his foster home and that his foster parents intended to adopt him should he be freed for adoption. The court observed that A.E. was closely bonded to his foster family and that they had the skills and experience necessary to respond positively to his challenging behaviors. Based on these and other findings, the court concluded that termination of both parents' rights was in A.E.'s best interests. Father appealed.

Father argues that there was no evidence to show that the causes and conditions preventing reunification could not be remedied within a reasonable period of time. He asserts that his parenting skills were improving, the parent-child bond was gaining strength, and that his transition to furlough status was stabilized. According to father, he should be given additional time to improve his parenting skills because there is no evidence that A.E. would be harmed by the delay.

We find these arguments without merit. The trial court "may terminate parental rights only when it finds by clear and convincing evidence that to do so is in the best interests of the child as determined by consideration of four statutory factors." In re J.B., 167 Vt. 637, 639 (1998) (mem.); see 33 V.S.A. § 5114. The most important factor in the court's best-interests analysis "is the likelihood that the parent will be able to resume parental duties within a reasonable time." In re J.B., 167 Vt. at 639. As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.).

The question before the court is father's ability to parent A.E. within a reasonable period of time as measured from A.E.'s perspective. The court is not asked to decide how long A.E. can continue in foster care before suffering harm. The court applied the appropriate standard here, and its findings are supported by the record. As set forth above, father failed to comply with the majority of the case plan requirements. He did not address his substance abuse and

anger management problems.  He had no suitable housing for A.E., and he was only sporadically employed.  His contact with A.E. had been limited and supervised.  He had gone back to jail once for drug use and had only partially complied with the other conditions of his furlough.  At the same time, A.E. was seventeen months old, and he had spent most of his life in foster care.  All of these findings are relevant to father's ability to parent A.E. within a reasonable period of time, despite father's assertion to the contrary, and all are supported by evidence in the record.  The court's findings support its conclusion, and they also show that there was no "reasonable possibility that the causes and conditions which led to the filing of the petition [could] be remedied and the family restored within a reasonable time."  In re J.B., 167 Vt. at 639.  To the extent father disagrees with the court's assessment of the evidence, we reiterate that it is exclusively the role of the family court, not this Court, to determine the credibility of the witnesses and weigh the evidence.  In re A.F., 160 Vt. 175, 178 (1993).  We find no error.

Affirmed.

BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Beth Robinson, Associate Justice

3