*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-321

APRIL TERM, 2013

| | |
|---|---|
| In re A.W. and J.W., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Lamoille Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 17/18-3-10 Lejv |
| | |
| | Trial Judge: Dennis R. Pearson |

In the above-entitled cause, the Clerk will enter:

Father appeals from a superior court order terminating his parental rights to the minors A.W. and J.W. He contends the court's findings concerning his relationship with the children are clearly erroneous. We affirm.

The facts may be summarized as follows. Father has three children with mother—a son, who was almost fourteen years old at the time of the termination proceeding, and two daughters, A.W. and J.W., who were eleven and five years old respectively. Between 2004 and 2009, the Department for Children and Families investigated various reports of drug use by mother and general neglect of the children. In March 2010, mother's five-month old baby with a different father was found to be unresponsive and transported to the hospital, where he died. The children were taken into emergency custody and placed with their maternal grandmother, where they have since remained.

While these events were occurring, father was incarcerated on a number of DUI convictions and probation violations. He was released in December 2010, briefly reincarcerated for non-compliance with conditions in May and September 2011, and was on furlough release at the time of the termination hearing. The court found that he will remain under the supervision of the Department of Corrections until March 2021.

Both parents stipulated to an adjudication of CHINS in August 2010. The initial case plan called for father to comply with all DOC recommendations, engage consistently with all recommended services, and abstain from the use of drugs and alcohol. After his release from prison in December 2010, father began working with a DCF case worker and had visits with the children under the supervision of an Easter Seals parent-child supervisor. The case worker observed that father's focus "has always been on his son," that his daughters were "secondary," that he was not "attuned to their needs," and indeed that he had been incarcerated for much of J.W.'s life. From her observations, she concluded that father's relationship with J.W. was "quite minimal," and with A.W. "fairly minimal." The Easter Seals supervisor similarly observed that father appeared to have a good bond with his son, but that he was unable to address the emotional needs of his younger daughters, indeed that it was A.W. who acted the role of parent

for her younger sister, even when father was present. When this was discussed with father, he did not, as the court later found, "appear to grasp the issue, and took no real steps to address it."

In March 2011 father tested positive for drugs, in May 2011 he was found to be in possession of marijuana, and in July and September he was found to be consuming alcohol and briefly reincarcerated. Based on the foregoing, DCF filed a termination petition as to both parents, citing a general failure to make progress under the case plan. Following a hearing, the court granted the petition as to mother, and granted it in part, and denied it in part, as to father.[1] Concerning father, the court found that, although he had recently made some progress in maintaining sobriety, his relationship with each of the children was "the determinative factor." In this regard, the court found that father "essentially ha[d] no relationship at all with" J.W., that he had not been a part of her life, and that he had "no established parental bond to speak of." There was, the court continued, "no emotional connection [and] no innate sense of parent-child trust and proven commitment, from which to build any viable parenting role." The court thus concluded that there was no likelihood father could resume parenting J.W. within a reasonable time.

Although there was some foundation for a relationship with A.W., the court found that it was "superficial" and that father continued to lack the "ability, and inclination to interact consistently, and positively" with her and attend to her needs during the critical pre-adolescent and teenage years. Given "the limited nature and scope of their present relationship," and father's continuing "preoccupation with maintaining his own sobriety and compliance with" his furlough conditions, the court concluded that there was no likelihood he could resume parental responsibilities for A.W. within a reasonable time. The court further found that both J.W. and A.W. had an excellent relationship with their grandmother, and were thriving in her home.

Based on father's demonstrated bond and relationship with his son, the court concluded that there was a "sufficient connection, and basis on which [father] might be able to resume a role as primary parent," although the court emphasized that it was "not clearly convinced at this time" that there was no reasonable probability of father's resuming his parental role, and stressed that the son would remain in his grandmother's custody. Accordingly, the court denied the petition as to the son, and set the matter for further proceedings to consider an amended disposition order and case plan. Father has appealed from that portion of the order terminating his parental rights to J.W. and A.W.[2]

Father's sole contention on appeal is that the trial court's findings concerning his relationship with J.W. and A.W. are clearly erroneous because they were not based on a current assessment of the relationship. See In re C.B., 162 Vt. 614, 614 (1994) ("Our decisions reflect the need for findings based on current circumstances of the family."). Father asserts in this regard that "[o]nly the DCF case worker" testified as to the weakness of the relationship with J.W. and A.W., and she had not observed parent-child visits since September 2011, nearly a half-year before the termination hearing. In contrast, he asserts that the Easter Seals supervisor, the

---

[1] As mother has not appealed from the order, we need not recite or address the court's findings as to her.

[2] The State has not appealed from that portion of the order denying the petition as to the son.

2

children's foster mother, and father all testified that his current relationship with J.W. and A.W. was positive and improving.

We review the trial court's findings solely for clear error, and will not disturb them if supported by credible evidence. In re D.B., 2003 VT 81, ¶ 4, 175 Vt. 618 (mem.). We leave it to the "sound discretion" of the trial court to determine the credibility of the witnesses and balance the competing evidence and claims. In re A.F., 160 Vt. 175, 178 (1993). Contrary to father's claim here, the testimony of the Easter Seals supervisor largely supported that of the DCF case worker; while the supervisor acknowledged that she had observed "moments" when father appeared to be getting along well with the younger children, she also testified that his bond with his son was strong while that with J.W. and A.W. was "not so much," that it was A.W. rather than father who attended to J.W.'s needs during visits, and that father had trouble "connecting with his younger children." Furthermore, while the children's grandmother acknowledged that father's relationship with the children was "positive" and father testified that it was "really great," the trial court was in the best position to evaluate the testimony and weigh it against the countervailing testimony of the DCF case worker and Easter Seal's supervisor. Id. Accordingly, we find no merit to the claim that the trial court's findings concerning father's relationship with the younger children were unsupported by credible evidence or clearly erroneous. We thus discern no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Brian L. Burgess, Associate Justice

_____
Beth Robinson, Associate Justice

3