*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2014-266

DECEMBER TERM, 2014

| | | |
|---|---|---|
| In re A.M., Juvenile | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Chittenden Unit, |
| | } | Family Division |
| | } | |
| | } | DOCKET NO. 36-2-12 Cnjv |

Trial Judge: James R. Crucitti

In the above-entitled cause, the Clerk will enter:

Mother and father appeal separately from a judgment of the superior court, family division terminating their parental rights to the minor A.M. Father contends the trial court erred in crediting the testimony of a case worker and the child's foster mother to support certain findings. Mother contends the court erred in terminating her parental rights based on an alleged finding that A.M.'s interests were better served by her foster parents. We affirm.

The material facts may be summarized as follows. A.M. was taken into custody by the Department for Children and Families at birth in February 2012, based on DCF's earlier involvement with mother's older child, who was then in DCF custody because of mother's continued inability to care for the child and substantiated findings that A.M.'s father, who lived with mother, had sexually abused others when he was an adolescent. A.M. was placed with a foster family, where she has since remained. Both parents subsequently stipulated to an adjudication of CHINS.

Following a hearing in April 2012, the trial court approved a disposition plan with the goal of reunification and, if that failed, adoption. The plan set forth an array of services and goals for the parents, including continued participation in the Easter Seals parent-time coaching program during supervised visits with A.M.; mother's participation in individual mental-health counseling and parent education; and father's participation in individual mental-health and anger-management counseling, parent education, and a psychosexual evaluation.

Fifteen months later, in July 2013, the State filed petitions to terminate parental rights. The court held an evidentiary hearing over three days in April and July 2014, and issued a written decision in July 2014, granting the petitions.

The court found, in summary, that neither parent had made significant progress in attaining the case plan goals. Testimony from several parent educators noted mother's continued frustration, anger, and rough handling of the child during supervised visits, on one occasion holding her out of an open window. She continued to need assistance to understand the child's cues, and had gained little insight into the child's developmental stages. Father was calmer with the child during visits, but argued with mother, which upset the child, and reacted negatively to suggestions from educators and coaches. Although an assessment by one clinical evaluator found that the parents had met a "minimal standard" for parenting competency, it was considerably qualified by observations that they both still struggled with emotional volatility and difficulty understanding the child's basis needs. The evaluator recommended substantial additional training and counseling before the parents could safely parent the child. The court also noted that parents were sporadically homeless, and continued to associate or live with people who posed safety risks to the child. Father had not engaged in anger-management counseling, and neither parent had consistently attended mental-health counseling, despite efforts by DCF case workers and parent educators encouraging them to attend. The court thus concluded that both parents had stagnated in their progress in meeting the case plan goals.

Applying the statutory best-interests criteria, the court concluded that—after more than two years of services—neither parent had demonstrated an ability to recognize and provide for the child's physical and emotional needs or provide a safe home environment, and neither had addressed their own emotional and mental-health issues sufficient to safely care for the child. Accordingly, the court concluded that neither parent could resume parental responsibilities within a reasonable period of time. The court also noted that A.M. had adjusted well to her foster home, that she had positive relationships with her foster parents and siblings, and was thriving. Accordingly, the court granted the petitions. These appeals followed.

Father contends the trial court erred in finding the testimony of two witnesses—a DCF case worker and the child's foster mother—to be credible. The claim is based on an email exchange between the case worker and foster mother in which the latter expresses frustration with the length of time that had passed without a final decision by the State on whether to seek a termination of parental rights. The case worker's initial response noted the need "to be fair to the parents to see if they can demonstrate the ability to meet the requirements of the case plan" and the child's needs. In a follow-up response, the case worker expressed her understanding of the foster mother's frustration, and observed that giving the parents "a bit longer (and a little bit more rope to most likely not consistently engage in [services]") would afford the State a "stronger case."

In its findings here, the trial court acknowledged that the email raised a concern about the case worker's fairness, but found that the record as a whole disclosed "no evidence of lack of effort by DCF in this reunification effort." On the contrary, the court found that DCF had provided extensive services to both parents, engaged experts to conduct multiple independent assessments of the parents' abilities and progress, afforded liberal parent–child contact, and offered funds to facilitate the parents' access to services and parent–child visits.

Father claims, nevertheless, that the trial court erred in crediting the case worker's testimony, asserting that it suggests she was "not tailoring her efforts to facilitate reunification,"

2

and that the error was prejudicial. We note at the outset that credibility determinations are the province of the factfinder. In re A.F., 160 Vt. 175, 178 (1993) (trial court enjoys considerable discretion in evaluating credibility of witnesses and weighing evidence).

Moreover, we are not persuaded that the trial court clearly erred. First, contrary to father's claim, nothing in the trial court's decision shows that it relied specifically on the case worker's credibility in rendering its key findings. Rather, as summarized earlier, the court relied principally on the testimony and reports of numerous parent educators, family coaches, and mental-health experts who had worked with the parents over a span of more than two years.

In addition, as the trial court observed, the email does not necessarily refute the extensive evidence of DCF's sustained efforts to facilitate reunification over a period in excess of two years. DCF, for example, facilitated extensive contact between the parents and child; the lack of progress in parenting ability that the parents showed through the course of those visits was a product of their own actions, not DCF's. In short, the record supports the trial court's findings, including those resting on the testimony of the DCF caseworker, and including its conclusion that DCF's reunification efforts here were not inadequate or pretextual. The fact that DCF did not adopt one clinical psychologist's suggestion to arrange separate parental visits with A.M. does not—as father asserts—require that the trial court conclude otherwise. Accordingly, we find no error.

Along similar lines, father argues that—in light of the email and other evidence showing that the foster mother wanted to adopt the child—the trial court erred in crediting her testimony that A.M. was attached to her foster family. Father argues that "common sense dictates discounting" the foster mother's views regarding the benefits of the foster placement. Again, as noted above, the trial court enjoys considerable discretion in evaluating the credibility of witnesses. In re A.F., 160 Vt. at 178. It was not compelled to discount the foster mother's testimony simply because she candidly acknowledged an interest in adoption. Moreover, the foster mother's testimony was fully corroborated by the testimony of a clinical psychologist who had observed A.M.'s interactions with her foster parents and noted the strong bond between them. We thus find no error.

Turning to mother's appeal, she contends the trial court fundamentally erred in predicating its decision to terminate her parental rights on its conclusion that the foster parents met the best-interests criteria "better." See In re E.B., 158 Vt. 8, 12 (1992) (observing that "parental rights cannot be terminated simply because a child might be better off in another home"). The record amply demonstrates, however, that the court based its decision on the statutory best-interests criteria, and most importantly on its findings that mother's demonstrated lack of progress over more than two years showed that she could not resume parental responsibilities within a reasonable period of time. While the court properly considered A.M.'s relationship with her foster parents under 33 V.S.A. § 5114(a)(1), this was not the focal point of its ruling. Its critical conclusion that there was no likelihood that parents would be able to resume their parental duties "within a reasonable period of time that befits this child's needs" rested completely on evidence independent of considerations of the child's adjustment to her foster home. Moreover, as noted above, the evaluator's conclusion that the parents met the "minimal standard" for parenting competency was tempered by her conclusion that they

3

substantial additional training and counseling before they could safely parent the child  For these reasons, we reject the argument that the trial court improperly terminated parental rights simply because it concluded that the child might be better off with the foster parents.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice