*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-113

AUGUST TERM, 2015

| | |
|---|---|
| In re S.P., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Chittenden Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 39-2-13 Cnjv |

Trial Judge: Michael S. Kupersmith

In the above-entitled cause, the Clerk will enter:

Mother appeals from a family court order terminating her parental rights to the minor S.P. She contends: (1) the court failed to provide a clear, adequate explanation of its decision; and (2) the evidence does not support several of the court's findings. We affirm.

The facts may be summarized as follows. Two days after S.P. was born, in early February 2013, the State filed a petition alleging S.P. was a child in need of care or supervision (CHINS) and an emergency care order based on mother's extensive history of substance abuse and Department for Children and Families (DCF) involvement, which had resulted in the termination of her parental rights to five older children, one with S.P.'s father. S.P. was returned to mother under a conditional care order, requiring that she attend all prescribed counseling and parent education programs, maintain safe and stable housing, and remain drug and alcohol free. In late February 2013, the parents stipulated to an adjudication of CHINS based, in part, on mother's lengthy history of mental-health, parenting, and substance-abuse issues.

Several months later, in May 2013, the court ordered that custody of S.P. be transferred to DCF based on the parents' failure to comply with the conditions. The initial case plan, filed the same month, identified concurrent goals of reunification and adoption, and set forth a plan of services calling for mother to undergo a mental-health trauma assessment and follow recommendations for follow-up care, complete parent education, locate stable housing, and continue substance-abuse counseling. In September 2013, mother and S.P. were accepted into the Lund Home, and the court adopted a modified case plan maintaining the same goals and plan of services with a three-month time-frame to achieve reunification. Mother was discharged from Lund in April 2014; the discharge summary concluded that, throughout her stay, mother had exhibited limited insight into her need for mental-health and substance-abuse treatment, and was not motivated to engage in services for the benefit of herself and S.P. Despite an extensive trauma history and possible cognitive impairments, the report concluded that mother's willingness to engage in treatment was limited, and recommended intensive outpatient treatment and a comprehensive cognitive assessment.

After mother's discharge from Lund, she lived with S.P. and father at the home of an acquaintance under a safety plan with DCF. A report in May 2014 that S.P. and the parents were living in a car, that the parents had been arguing, and that mother had threatened S.P. led to a new safety plan focused on mother's maintaining safe housing, advising DCF of any planned move, and ensuring that mother remain substance free and in compliance with the case plan. In July 2014, mother moved without informing DCF, which led to a third safety plan.

A report in August 2014 that S.P. was having unsupervised contact with father, contrary to a provision in the safety plan, led to the removal of S.P. from mother's care, and shortly thereafter the State filed a petition to terminate parental rights. That same month, mother gave birth to a daughter, K.P., who was immediately taken into DCF custody. Both S.P. and K.P. were placed in the same foster home, where they have since remained.

The court held an evidentiary hearing over the course of three days in January 2015, and issued a written decision, granting the petition, in February 2015. The court took judicial notice of and adopted in this case the findings in the various final court decisions relating to mother's five prior termination-of-parental-rights matters. The most recent of these decisions was a termination-of-parental-rights decision from 2012 involving a different child. In that decision, the court found that mother had a history of depression and anger management difficulties, and had been the victim of domestic violence, as well as suffering past trauma from her own childhood. The court connected mother's mental-health issues to her inability to provide a safe and stable environment for any of her children, and found that mother had exhibited a stubborn resistance to mental-health counseling.

Specifically in connection with this case, the court found, in summary, that, although mother had made some progress, it was not sufficient to resume parental responsibilities within a reasonable time. She had not completed the Lund residential program or followed through on the recommendations at the time of discharge, also contained in the case plan, that mother engage in intensive mental-health counseling. The court noted that such compliance was "an essential step towards reunification" as evidenced by mother's mental-health history and the record of her loss of parental rights to five other children. In addition, the court found that, although fairly consistent in maintaining child visitation, mother's struggles with substance-abuse and that mental-health issues had impeded her ability to play a constructive role in S.P.'s welfare. The court also found that S.P. had bonded with his foster parents, and was thriving in the stable home environment they provided. Accordingly, the court concluded that termination of parental rights was in the child's best interests. This appeal by mother followed.[*]

Mother contends the trial court failed to provide a clear explanation of its decision, and in particular failed to specify the facts and findings underlying its conclusion that mother could not resume parental responsibilities within a reasonable time. Our review on appeal is limited. "When findings are attacked on appeal, our role is limited to determining whether they are supported by credible evidence." In re A.F., 160 Vt. 175, 178 (1993). We will not disturb the trial court's findings unless clearly erroneous, nor its conclusions if reasonably supported by the findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.). We leave it to the sound discretion of the

---

[*] Father has not appealed from the order terminating his parental rights.

trial court to determine the credibility of the witnesses and weigh the evidence. In re A.F., 160 Vt. at 178.

Although the trial court here did not expressly reference or repeat its earlier findings in support of its conclusions—a better practice in juvenile proceedings—they fully supported the conclusion that mother could not resume parental rights and responsibilities within a reasonable time. These included the findings adopted from prior, final decisions that mother's history of trauma and mental-health issues prevented her from providing a safe and stable environment for her prior children, as well as the court's current findings—amply supported by the evidence—that mother was discharged from Lund for failure to engage in the treatment program, and that she had failed to follow through on Lund's recommendation, as well as that of the case plan, that she engage in intensive trauma-focused counseling, a requirement the court found to be essential to reunification. The finding that mother has mental-health challenges that interfere with her ability to parent, and that she continues to resist such treatment, and that she failed to engage in the Lund treatment program are sufficient to support the court's conclusion that mother could not resume parental responsibilities within a reasonable time.

Mother further contends that her failure to engage in therapy stemmed from factors beyond her control, and that there was no evidence the lack of counseling prevented her from adequately parenting the child. The record does not support mother's claim that she failed to engage in counseling because a therapist was unavailable. The record does contain substantial evidence of her need for counseling—including a history of mental-health issues and ongoing problems relating to impulsivity, anger control, and the ability to stay focused and on task—which reasonably supported a finding that her failure to engage in counseling impeded her ability to resume parental responsibilities within a reasonable time. Mother notes in this regard that the evidence showed progress in her ability to care for the child, but it was progress in a highly structured and supervised setting such as Lund, and did not support a conclusion that she could resume independently caring for the child.

Mother further questions the reliability of her Lund counselor's testimony that staff and residents had reported that she was medicating S.P. with Benadryl so that he would go to sleep earlier and sleep longer. The court merely noted the concern of Lund staff in this regard; it did not rely on the evidence to any extent in concluding that mother could not resume parenting the child. Accordingly, the issue is immaterial. See In re R.W., 2011 VT 124, ¶ 17, 191 Vt. 108 (noting that we will reverse termination-of-parental-rights judgment only where error has affected party's substantial rights). A similar conclusion applies to mother's claim that the court erroneously relied on several findings by DCF that mother had violated provisions of the safety plans in place while S.P. was in her custody; the violations involved a report of a fight with father and a threat to S.P., a move without advising DCF, and a report that S.P. was in a car with father contrary to the safety plan's requirement that all such contact be supervised. Again, apart from noting the violations in outlining the case history, the court did not rely on them in support of its conclusion that mother could not resume parental responsibilities within a reasonable time. See id.

Finally, mother contends the evidence did not support the court's finding that her ongoing personal struggles had impeded her ability to play a constructive role in the child's life. On the contrary, the record evidence of mother's inability—from S.P.'s birth forward—to retain custody

and safely and independently parent the child, resulting in DCF custody and the child's placement in foster care, amply supports the court's finding that she had not played a constructive role in the child's life. Accordingly, we find no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

4