*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2015-457

MARCH TERM, 2016

In re J.S., Juvenile

APPEALED FROM:

Superior Court, Windham Unit,
Family Division

DOCKET NO. 124-11-14 Wmjv

Trial Judge: John P. Wesley

In the above-entitled cause, the Clerk will enter:

Father appeals from a family court judgment terminating his parental rights to the minor J.S. He contends the court's best-interests analysis was improperly based on: (1) unsupported speculation about father's ability to resume parental responsibilities; and (2) the conclusion that the child would be better off if adopted by his foster parents. We affirm.

J.S. was born in July 2014. Custody was transferred to the Department for Children and Families almost immediately, pursuant to an emergency care order based on concerns about mother's ability to care for the child due to a history of substance abuse. The child's paternity was uncertain, although testing later confirmed father as the biological parent. Both parents stipulated to an adjudication of CHINS in August 2014. Father was on furlough at the time from an underlying sentence of three months to three years, and was subject to conditions requiring drug testing, substance-abuse counseling, and mental health counseling. The initial case plan set alternative goals of reunification or adoption, provided for weekly visits by father with J.S., and required father to complete a substance-abuse assessment, follow all recommendations, and comply with all Department of Corrections conditions. An updated plan in June 2015 changed the goal to termination of parental rights and adoption, and the court held an evidentiary hearing on the matter in November 2015.*

The family's DCF social worker testified that father began to miss visits with J.S. in the early spring of 2015, and his probation officer testified that father tested positive for cocaine and buprenorphine in April 2015. As a result, father's furlough was revoked in May 2015. The probation officer testified that he and another officer visited father several times in jail and offered him the option of participating in a residential treatment program as an alternative to re-incarceration. The program entailed treatment for four to six months and then father's re-release to furlough status. According to the officer, father rejected the offer, indicating that he did not want DOC or DCF "in his life," and that he preferred to "max out his sentence." Consequently, father was sent to a work camp, where he remained at the time of the TPR hearing in November

---

* Mother failed to appear at the hearing, and the court subsequently entered a separate order terminating her parental rights. There was no appeal from that order.

2015. He was scheduled for release in November 2016, with the possibility of earlier release in May 2016 with full credit.

The DCF social worker testified that, although father had made some progress toward reunification, his visits with the child came to an end with his re-incarceration, as did his participation in substance-abuse counseling. The social worker also testified that J.S. had been living with his foster family for one year, where he was loved and well-adjusted. She further testified to J.S.'s critical need for continuity, security, and permanence.

At the conclusion of the hearing, the court entered findings on the record and issued a subsequent judgment order. The court found, in summary, that father's involvement in the child's life was relatively brief following the confirmation of his paternity; that he had made some progress through regular contact with J.S; and that all progress had ceased when he tested positive for drugs and then affirmatively chose re-incarceration rather than a treatment program and re-release to furlough. The court concluded that father could not resume parental responsibilities within a reasonable time, measured from the child's perspective and need for permanence, and granted the petition. This appeal followed.

Father contends the court's finding that he could not resume parental responsibilities within a reasonable time was based on "speculation" that he would have been released from residential treatment earlier than from prison, because the length and availability of a residential treatment were not certain. The court found, and the evidence showed, that the treatment would run from four to six months, and that father rejected the plan out of hand not because he was uncertain about its length or availability but because he did not want DCF and DOC "in his life." The court's findings and conclusions are reasonably supported by the evidence, and we discern no basis to disturb them or conclude that they are speculative. See In re A.F., 160 Vt. 175, 178 (1993) (noting that we will not disturb trial court's findings unless clearly erroneous, or its conclusions if reasonably supported by findings). The trial court also reasonably inferred from the evidence that resuming treatment and contact with J.S. to the point sufficient to resume parental responsibilities would take father an unreasonably long period of time after his release.

Father's additional contention that the trial court improperly based its decision on a finding that J.S. would be better off with his foster family is not supported by the court's findings and conclusions. Accordingly, we find no basis to disturb the judgment. Id.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

2