Skoglund, J.
¶ 1. Mother appeals the family court’s order concluding that her son B.G. is a child in need of care or supervision (CHINS). Mother argues that the court erred in finding that B.G. was abandoned or without proper parental care because mother made arrangements for B.G.’s care. We affirm the CHINS adjudication on the basis that B.G. was abandoned.
¶ 2. B.G. was born in September 2006. Mother and father separated in 2007. B.G. has a younger half-sister, C.B., born in August 2009. Mother’s relationships with B.G.’s father and her two subsequent partners, including C.B.’s father, were abusive. In 2010, mother was prescribed pain medication, and this led to a heroin *318 addiction. She used between ten and fifty bags of heroin a day and was under the influence at times when the children were in her care. Mother often left B.G. with his paternal grandfather and step-grandmother. In 2011, when mother planned to move to New York, grandparents began caring for B.G. full time. At their request, mother signed a letter allowing grandparents to communicate with school officials and to get B.G. medical attention. B.G.’s step-grandmother has been responsible for all interactions with school, doctors, dentists, and counselors. Mother did not participate in any of these aspects of B.G.’s life. After several failed attempts at residential treatment, mother began medication-assisted treatment in October 2014. She continued to use marijuana, and this made her ineligible for take-home doses, requiring her to travel to Rutland daily.
¶ 3. B.G. witnessed the domestic violence in mother’s relationships even after 2011 when his time with mother was quite limited. B.G. is afraid of mother’s former partners, has nightmares, and has a high level of anxiety. Mother did not take steps to get counseling for B.G. and did not participate once B.G.’s grandmother arranged for counseling.
¶ 4. In January 2014, the court removed B.G.’s half-sister, C.B., from mother’s home. The court issued a temporary custody order transferring custody of the half-sister to grandparents with protective supervision by the Department for Children and Families (DCF). There was no order issued pertaining to B.G., but the court noted that there was an agreement reached by DCF, mother, and step-grandmother that if mother tried to remove B.G. from step-grandmother’s care, DCF would be notified and would seek a conditional custody order. Mother did not progress past supervised visits with C.B.[1]
¶ 5. In January 2015, the State filed a petition alleging B.G. was CHINS for lack of proper parental care. In October, the State filed an amended petition adding an allegation that B.G. was also CHINS because he had been abandoned. A contested hearing was *319 held in November 2015.[2] Following the hearing, the court found that there was sufficient evidence to support the petition on both counts. The court found that mother had effectively abandoned B.G. by failing to exercise any parental responsibilities and voluntarily ceding all responsibility to grandparents. The court concluded that prior to January 2014 mother was “either unwilling or unable to exercise any meaningful degree of parental responsibility for B.G.” It further concluded that from January 2014 until the date of the petition, mother had exercised no parental responsibilities and that “while this may have been by agreement with DCF, it was in effect a more formal recognition of what had been to that point a de facto abandonment.” It noted that mother had the opportunity to assert parental rights and responsibilities but chose not to do so. The court also found that mother was unable to provide B.G. with proper parental care. The court explained that at the time the petition was filed, in January 2015, mother had not addressed her own addiction and victimization issues sufficiently to provide B.G. with appropriate parental care. Although she was in a program to treat her addiction, she continued to use marijuana and needed to travel daily to Rutland for treatment. In addition, mother required counseling to treat her history as a serial victim of abusive relationships. Mother appeals.
¶ 6. A child may be adjudicated CHINS when the State demonstrates, among other things, that the child has been “abandoned,” or “is without proper parental care or subsistence, education, medical, or other care necessary for his or her well-being.” 33 V.S.A. § 5102(3)(A), (B). The State has the burden of demonstrating CHINS by a preponderance of the evidence. Id. § 5315(a).
¶ 7. We begin with the court’s finding that B.G. was CHINS because he was abandoned. Under the statute, there are several different circumstances that can result in abandonment:
A person is considered to have abandoned a child if the person is: unwilling to have physical custody of the child; *320 unable, unwilling, or has failed to make appropriate arrangements for the child’s care; unable to have physical custody of the child and has not arranged or cannot arrange for the safe and appropriate care of the child; or has left the child with a care provider and the care provider is unwilling or unable to provide care or support for the child, the whereabouts of the person are unknown, and reasonable efforts to locate the person have been unsuccessful.
Id. §5102(3)(A).
¶ 8. Mother focuses on the third circumstance — when a parent is “unable to have physical custody of the child and has not arranged or cannot arrange for the safe and appropriate care of the child.” Id. She argues that she did not abandon her child because she arranged for the “safe and appropriate care of’ B.G. with his grandparents. Id. In contrast, the State argues that the portion of the statutory definition applicable in this case is the first circumstance — abandonment due to mother’s unwillingness to have physical custody of her child — and this circumstance is not dependent on whether mother arranged for appropriate care.
¶ 9. We conclude that the findings support abandonment due to mother’s unwillingness to care for B.G. The evidence demonstrated that at the time the CHINS petition was filed, mother had not been exercising any parental responsibilities for at least a year. Mother was not taking physical care of B.G. and exercised only sporadic visitation. Further, she did not participate in B.G.’s life in any meaningful way, voluntarily abdicating all responsibility for B.G.’s life, including his schooling and medical needs, to B.G.’s grandparents. While mother testified that she wanted to reunite with her child, the court was within its discretion in failing to credit mother’s testimony and instead relying on mother’s actions to conclude that she was unwilling to take physical custody of B.G. and therefore abandoned him within the meaning of the statute. See In re A.F., 160 Vt. 175, 178, 624 A.2d 867, 869 (1993) (explaining that family court has discretion to determine witness’s credibility and weigh evidence).
¶ 10. Because we conclude that the CHINS adjudication was proper under § 5102(3)(A), we need not reach the question of *321 whether B.G. was also CHINS due to lack of proper parental care under § 5102(3)(B).

Affirmed.

 The family court subsequently granted a petition to terminate mother’s rights, and this Court affirmed. In re C.B., No. 2016-014 (Vt. May 12, 2016) (unpub. mem.), https://www.vermontjudiciary.org/UPEC2011Present/eo16-014.pdf [https://penna.cc/Z3DT-RS5S].

 At the final hearing, father signed a stipulation admitting that B.G. was CHINS for lack of proper parental care based on the facts that at the time the petition was filed father’s contact with B.G. was minimal and father had previously physically restrained B.G. and presented a risk of harm to B.G. We do not reach the question of whether this stipulation was sufficient on its own to support a CHINS determination.