VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.    23-AP-026

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JUNE TERM,   2023

| | |
|---|---|
| In re L.B., Juvenile<br>(A.J., Mother\*) | } APPEALED FROM:<br>}<br>} Superior Court, Windham Unit,<br>} Family Division<br>} CASE NO. 21-JV-00033<br> Trial Judge: Jennifer Barrett |

In the above-entitled cause, the Clerk will enter:

Mother appeals the trial court's final order terminating her parental rights as to her nine-year-old daughter, L.B.  We affirm.

In January 2021 the State filed a child-in-need-of-care-or-supervision (CHINS) petition and sought an emergency care order for L.B. based on allegations that L.B.'s guardians (maternal grandparents) were verbally and physically abusing her.  At that time, mother was living in New York, and L.B. had been living with grandparents for four years.  L.B. first came into grandparents' care when she was three years old.  Mother had asked her parents to care for L.B. due to mother's mental-health struggles and housing insecurity.  Grandparents gained guardianship over L.B. when she was five years old.

The court granted an emergency order, and L.B. entered custody of the Department for Children and Families (DCF) in January 2021.  In March 2021, the parties agreed by stipulation or on the record that L.B. was a CHINS, and the court entered a merits order to that effect.  DCF filed a proposed case plan in April 2021, which the court adopted in June 2021 following a disposition hearing.  The initial disposition order had a goal of reunification with mother.  The case-plan expectations for mother included seeking a mental-health assessment and treatment, engaging in family therapy with L.B., demonstrating the ability to meet LB's needs, maintaining communication with L.B.'s care providers, and complying with the Interstate Compact on the Placement of Children (ICPC) process for L.B. to be placed with mother in her home state of New York.

Following initial disposition, there were some delays in the case due to efforts to determine the identity of L.B.'s father and due to mother's ICPC process in New York.  The court eventually confirmed L.B.'s father through genetic testing, but it later terminated father's parental rights—he has not appealed.  Mother's ICPC placement request was denied by an interstate caseworker based on multiple incidents of domestic violence and substance abuse by

mother and her boyfriend. Mother and her boyfriend then moved from New York to Vermont in March 2022.

In May 2022, the State moved to terminate mother's rights. In December 2022, following a two-day hearing, the court made findings and conclusions orally on the record and issued a written order terminating mother's parental rights. The court relied particularly on the following findings. Although mother loved L.B., mother had not played a constructive role due to her lack of contact with L.B. L.B. had not lived with mother for six years at the time of the final hearing. Although mother acted appropriately and met L.B.'s needs during visits, mother attended only four of ten in-person visits that were offered. At the time of the final hearing, mother had not seen L.B. in approximately six months. Mother also had made little progress toward many of her case-plan expectations. Mother had not been engaged in mental-health counseling in at least eight months, and visitations with L.B. never progressed to a level where they were able to engage in family therapy, which was one of the case-plan expectations. Mother also did not meet the expectation that she maintain communication with L.B.'s care providers.

The court noted that L.B. had experienced significant traumas and any caregiver for L.B. would need to understand a trauma-informed approach. Mother struggled to control her anger during team meetings, including when one of her children was present. DCF informed mother that her relationship with her boyfriend was a barrier to reunification due to ongoing domestic violence, but mother made clear that she would not leave her boyfriend even if leaving him was necessary to properly care for L.B. Given L.B.'s history of trauma, the court found that "being exposed to domestic violence in the home would be extraordinarily traumatic, even more so than to an ordinary child." Mother had not engaged with a domestic-violence coordinator since moving to Vermont, which was another case-plan expectation. In addition, mother was living at a homeless shelter at the time of the final hearing, but was required to leave shortly and did not have new housing secured. The court found that all of these factors undermined mother's ability to meet L.B.'s needs.

In contrast, the court found that L.B. felt safe and comfortable in her current placement, a residential therapeutic program. L.B.'s needs were generally being met there, and she had developed a strong relationship with a foster parent who would be willing to adopt her. Given all of the above, the court concluded that mother's progress had stagnated, so there was a change in circumstances warranting examination of the statutory best-interests factors. Analyzing the factors based these factual findings, the court concluded that mother would not be able to resume parenting within a reasonable period of time and that terminating her parental rights was in L.B.'s best interests.

On appeal, mother argues that the evidence does not support terminating mother's parental rights and that the court erred by focusing on the past rather than her prospective ability to meet L.B.'s needs. She claims that she has made substantial progress toward the case plan and will be fully ready to parent L.B. within four months. She points to evidence that she is making progress toward gaining her driver's license and is working with a housing coordinator to get stable housing. Mother emphasizes her positive interactions with L.B. during visits and asserts that keeping her in L.B.'s life "may help stabilize [L.B.'s] mental health."

When termination is sought after initial disposition, the family division must find by clear and convincing evidence that there has been a change of circumstances and that termination is in

the child's best interests. See 33 V.S.A. §§ 5113(b), 5317(c), (d). In assessing the child's best interests, the court must consider the statutory criteria. Id. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). "As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings." In re H.T., 2020 VT 3, ¶ 34, 211 Vt. 476. This Court will "not reweigh the evidence or reassess the credibility of witnesses on appeal." Id.

Here, mother disagrees with the trial court's weighing of evidence and focuses on evidence that favors her, but this does not provide a legal basis for reversal. "[T]he mere fact that a parent has shown some progress in some aspects of his or her life does not preclude a finding of changed circumstances warranting modification of a previous disposition order." In re A.F., 160 Vt. 175, 181 (1993). Mother does not contest the trial court's findings that her struggles with anger management and mental health and the ongoing domestic violence with her boyfriend posed a significant risk to L.B.'s health and well-being, nor does she contest that she failed to take steps to address those issues as set forth in the case plan. As the court reasonably found, these issues detracted from mother's ability to meet L.B.'s needs.

Mother's lack of any recent parenting relationship with L.B.—including that L.B. has not lived with mother for six years and that mother had inconsistent and infrequent visitation with L.B. during the case—was another key factor supporting the court's conclusions. Although mother claims that she missed visits because she lacked transportation and that she is now in the process of addressing that issue by seeking her driver's license, the court found, based on the testimonies of mother and a DCF caseworker, that transportation was a consistent issue for a long time and mother simply did not prioritize securing reliable transportation. Likewise, mother's prediction that she will likely have her own housing four months from now does not undermine the court's finding that mother failed to demonstrate an ability to meet L.B.'s needs within a reasonable period of time by providing a stable and safe environment. Mother was adamant that she will remain with her boyfriend despite ongoing domestic violence and the risks that that poses to L.B. The court's conclusion that there was a change in circumstances due to mother's stagnation in her progress and its conclusion that the best-interests factors supported terminating mother's parental rights are both supported by credible evidence in the record, most of which mother does not dispute.

Although mother is correct that the court's best-interests analysis is prospective in nature, past events are relevant to the inquiry and inform the court's assessment of a parent's future ability to parent. In re D.S., 2014 VT 38, ¶ 22, 196 Vt. 325. In addition, the trial court must measure what constitutes a reasonable period of time for a parent to resume parenting "from the perspective of the child's needs," and may take into account the age of the child and any special needs. In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29. The trial court highlighted the importance of meeting L.B.'s particular needs due to her history of trauma and found based on ample evidence that mother had not demonstrated sufficient progress toward being able to consistently meet those needs. Mother was not entitled to any particular length of time to demonstrate progress. Under the circumstances, the court acted within its discretion in determining that mother would not be able to resume parenting within a reasonable period of time, that the other statutory factors weighed against mother, and that termination of mother's parental rights was in L.B.'s best interests.

3

Affirmed.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice


_____
William D. Cohen, Associate Justice


_____
Nancy J. Waples, Associate Justice