2 A.3d 817 (2010)
2010 VT 61
In re J.G., Juvenile.
Nos. 09-359, 09-434.
Supreme Court of Vermont.
June 22, 2010.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.

ENTRY ORDER
¶ 1. Father appeals from a family court order terminating his residual parental rights to the minor J.G. Father contends the court erred in: (1) finding that there had been a substantial change of material circumstances; and (2) amending its original termination order to provide for a transfer of custody to the minor's stepmother. We affirm.
¶ 2. The factual and procedural history of this appeal may be summarized as follows. *818 J.G. was born in June 1998. He initially lived with his mother in New York and had visits from his father, who resided in Vermont. In April 2000, the New York Family Court ordered a change of custody, placing the child with father and stepmother in Vermont. Stepmother thereupon became the child's primary care provider and, except for a brief period noted below, has continued in that role ever since.
¶ 3. Concerns about father's use of corporal punishment and the child's emotional health were brought to the attention of the Department for Children and Families in June 2002, and the case thereafter remained open. In January 2004, the family court issued a final relief from abuse order restricting father's contact with the child. Stepmother and father were divorced the following July. J.G. continued to reside with stepmother and had limited visits with father.
¶ 4. DCF remained concerned about evidence of bruising on the child's arms and legs and, in July 2004, took him into temporary custody. Father and stepmother stipulated to a CHINS adjudication in April 2005. J.G. remained in foster care until May 2005, when he was returned to stepmother's custody. While J.G. was in DCF custody, stepmother began counseling and engaged in regular and generally positive visits with the child. Father's visits, in contrast, elicited anger, fear, and emotional distress in the child, and the visits were eventually discontinued in April 2005. In June 2005, a permanency planning review concluded that father had failed to meet the expectations of the case plan that he engage in counseling and address his role in the child's emotional distress. The plan also noted that J.G.'s mother had not had any contact with him for years. Accordingly, DCF filed a petition to terminate father's and mother's parental rights.
¶ 5. The court held a contested termination hearing over several days in October and November 2005. Mother was served but failed to appear at the hearing. Stepmother was granted limited party status and was present and represented by counsel. The court issued a written decision in February 2006. Based on the evidence, including a forensic evaluation of the family, the court found that the child's relationship with father had been a source of severe stress and fear; that father had made no effort to seek counseling, attain an understanding of his role in inducing fear in the child, or develop an appreciation of the child's physical and emotional needs; and that father's continued contact would be detrimental to the child's physical and emotional health.
¶ 6. Nevertheless, the court concluded that termination of father's parental rights was not absolutely necessary to establish permanency for the child because stepmother was providing a stable home environment. It was sufficient, the court found, to suspend parent-child contact for a significant period of time to allow father time to seek counseling and the child "to heal and grow." Accordingly, the court denied the termination petition and ordered that contact be suspended and could only be resumed after a period of three years, conditioned upon a showing that father had "consistently and actively engaged in counseling and achieved sufficient insight into [J.G.'s] emotional situation and anxiety [such] that [father] can play a positive role in the child's emotional development." The court granted the petition as to mother. Finally, based upon its findings that stepmother had been the child's primary care provider for most of his life, that he viewed her as his main parental figure and support, and that she had provided a positive and stable environment, the court "vacated" the previous order entrusting *819 custody to DCF and transferred legal custody to stepmother.
¶ 7. Permanency review hearings were held in June 2006, March 2007, and April 2008. At the April 2008 review, the court approved a permanency plan calling for adoption by stepmother, and ordered that a hearing be scheduled in February 2009. On February 11, 2009, the child, through his court-appointed attorney, filed a motion to terminate father's parental rights. The court held an evidentiary hearing in early August 2009 and issued its decision later that month. Father acknowledged, and the court found, that he had failed to engage in counseling to help him understand and address J.G.'s emotional needs. Instead, he had spent the last three and a half years investigating the people who, in his view, had "illegally" taken away his child. Based on this evidence and its findings that father "has completely ignored the court's [earlier] decision and . . . has not taken any steps that would help him better understand his son and the effect of [his] actions on his son," the court concluded that the circumstances had stagnated and that this constituted a real and substantial change of circumstances.
¶ 8. Applying the statutory best-interests criteria, the court further found that, as a result of father's demonstrated refusal to accept any responsibility for the child's severe emotional problems or engage in any counseling over the previous three years, there was no likelihood that he would be able to resume parental responsibilities within a reasonable time. The court found that, over the same time period, J.G.'s relationship with stepmother had "blossomed," and that he had made "dramatic improvements" in his life, had adjusted well to his school and community, and was thriving socially and academically. Accordingly, the court ordered that father's residual parental rights be terminated and that custody be transferred to DCF without limitation as to adoption.
¶ 9. J.G., through his attorney, later moved to modify the court's decision to provide for continued custody with stepmother, who had exercised legal custody for the past three and a half years pursuant to the court's February 2006 ruling. Although a party to the proceedings, DCF did not oppose the motion. Father filed an opposition, however, asserting that the court lacked authority to transfer custody of the child to any person or entity other than DCF. The court, in response, issued a revised order providing that "[c]ustody and guardianship hereby remains with [stepmother] without limitation as to adoption." This appeal followed.
¶ 10. Father first contends the court erred in finding the requisite change of circumstances for modifying its earlier order denying the State's termination petition. The threshold finding of a substantial change of material circumstances is "most often found when the parent's ability to care properly for the child has either stagnated or deteriorated." In re H.A., 153 Vt. 504, 515, 572 A.2d 884, 890 (1990). Stagnation can be shown either "by the passage of time with no improvement in parental capacity to care properly for the child" or where "the improvement is so insignificant that it is unlikely the parent will be able to resume parental duties in a reasonable time." In re D.M., 162 Vt. 33, 38, 641 A.2d 774, 777 (1994). The evidence here amply supports the finding of stagnation; indeed, father acknowledged that, until shortly before the hearing, he had made no attempt over the past three years to comply with the court's requirement that he obtain counseling to gain insight into his role in the child's emotional distress and physical and emotional needs. See In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636, 852 A.2d 584 (mem.) (we will not *820 disturb the trial court's findings unless clearly erroneous, nor its conclusions if reasonably supported by the findings).
¶ 11. Father asserts, nevertheless, that there was no change of circumstances sufficient to support a termination of parental rights because stepmother continued to provide a stable home environment, and father's inaction had not caused "any negative impact on J.G." The essential point of requiring that a parent progress in meeting his or her goals toward reunification within a reasonable period of time is to provide permanence and stability in the life of a child. See In re J.S., 168 Vt. 572, 574, 719 A.2d 865, 868 (1998) (mem.) (the time accorded parents to progress toward achieving skills necessary for reunification must be measured from the perspective of the child's "need for stability and permanence"). To assert that a failure to meet parenting goals over a period of three years has no "negative impact" on the child or may be discounted because the child is otherwise receiving love and stability from another source is to miss this point entirely. Accordingly, we find no basis to disturb the court's ruling.
¶ 12. Father next asserts that the trial court lacked authority to order a termination of parental rights and award legal custody to stepmother instead of DCF.[1] As noted, DCF itself did not oppose the child's motion to modify the termination order. We requested DCF to address the issue on appeal, however, and its responsive brief generally supports father's position. Their argument is predicated on 33 V.S.A. § 5318(a)(5), which provides that, at the disposition hearing following a CHINS adjudication, "the court shall make such orders related to legal custody . . . as the court determines are in the best interest of the child, including:. . . (5) An order terminating all rights and responsibilities of a parent by transferring legal custody and all residual parental rights to the commissioner without limitation as to adoption."[2] This provision, DCF asserts, "specifically limits orders transferring residual parental rights without limitation as to adoption to the commissioner of DCF." Although DCF concedes that it does "not oppose, in theory, court orders transferring residual parental rights directly to qualified individuals" it argues that the statute simply does not allow it and would require an amendment to do so.
¶ 13. We are not persuaded that the statutory language or intent is so restrictive. In the first place, § 5318(a)(5) is one of seven custodial options available to the court "at disposition" following a CHINS adjudication. This was not a termination proceeding at the initial disposition phase, however, and as DCF concedes the statutory scheme "is silent concerning the types of post-disposition orders the court can *821 make." Moreover, even if it were reasonable to assume that the Legislature intended the courts to utilize the options set forth in § 5318 in post-disposition proceedings, as DCF argues, nothing in the statutory language suggests that the list of custodial options is exclusive. On the contrary, the statute provides that the court shall make such orders relating to legal custody as are in the best interests of the child, "including" the seven enumerated. As we have elsewhere explained, "the word `including' in a statute is ordinarily a word of enlargement, not one of limitation." Vt. Ass'n of Realtors, Inc. v. State, 156 Vt. 525, 531, 593 A.2d 462, 465 (1991).
¶ 14. Even if the list of custodial options in § 5318(a) is not exclusive, DCF asserts that any disposition involving a termination of parental rights must necessarily be accomplished by an initial award of custody to DCF. The statute, however, lists numerous other custodial options, such as "returning legal custody to the custodial parent," id. § 5318(a)(1), "transferring legal custody to a noncustodial parent," id. § 5318(a)(3), oras here "transferring legal custody to a relative or another person with a significant relationship with the child." Id. § 5318(a)(7). The interpretation advanced by DCF would effectively disallow these various options whenever the family court ordered a termination of parental rights. DCF does not explain the purpose that would be served by this result, nor do we perceive any. The statute may address the typical case where a termination of parental rights leaves no custodial option other than DCF, but this is hardly the only possible scenario. As the Legislature's intentional use of the term "including" implies, therefore, the more reasoned and likely purpose of § 5318(a)(5) was to provide one termination option, but not the only one.
¶ 15. DCF also appears to argue that a narrow reading is more consistent with the overall statutory scheme, which elsewhere provides that orders transferring custody to DCF pursuant to § 5318(a)(4) and (5) "shall be subject to periodic review at a permanency hearing." Id. § 5321(a). It would "make[] no sense," DCF asserts, for the Legislature to authorize a termination of parental rights and transfer of legal custody "to an individual and not ensure, through a permanency hearing, that the child's adoption moves forward as planned." As noted, however, there may be cases where, having granted a termination petition as to one parent and denied it as to the other, it is appropriate to transfer custody to the fit parent and simply close the proceeding. In others, such as the case at bar, the statute expressly provides that the order transferring legal custody to a relative or another person with a significant relationship with the child "may be subject to conditions and limitations" and "shall be subject to periodic review as determined by the court." Id. § 5318(a)(7). Thus, the statute provides ample authority in such cases for the court to ensure that the child's adoption moves forward as planned. Apart from this objection, DCF cites no other legislative, policy, or practical interests that might be thwarted by authorizing the transfer of legal custody to stepmother in this case. Indeed, as noted, DCF virtually concedes that it does "not oppose . . . court orders transferring residual parental rights directly to qualified individuals." We find no statutory obstacle as well.
¶ 16. Finally, father notes that the family court "is one of limited jurisdiction, and its jurisdictional grant must be strictly construed." In re B.S., 166 Vt. 345, 352-53, 693 A.2d 716, 721 (1997). The issue before us does not concern the family court's jurisdiction, however, which plainly extends to questions of child welfare and *822 safety. See id. We have also noted that such courts may exercise only the powers they are granted by the Legislature, In re M.C.P., 153 Vt. 275, 302, 571 A.2d 627, 642 (1989), but as discussed above the judgment hereterminating father's parental rights and continuing legal custody in the party who had exercised it continually for the preceding three and a half yearsis consistent with the statutory language and intent and within the court's authority. Accordingly, we discern no grounds to disturb the judgment.
Affirmed.
NOTES
[1] Although we question father's standing to challenge any post-termination custodial placement, this issue was not raised by any of the parties, and the matter has been fully briefed. Therefore, we will address the merits. See In re W.L., 2009 VT 41, ¶ 8, 185 Vt. 641, 974 A.2d 602 (mem.) (questioning the parents' ability, once their parental rights have been terminated, to appeal DCF's plan to place the child with the foster parents rather than the child's aunt and uncle but nevertheless addressing the appeal on the merits).
[2] This section was part of a comprehensive act revising the statutory scheme governing children in need of care and supervision. The act provides that it "shall take effect January 1, 2009 and shall apply to any petition filed after the effective date or any permanency review hearing held after the effective date." 2007, No. 185 (Adj. Sess.), § 14. Thus, the new provision plainly applied to the termination petition in this case, which was filed on February 11, 2009.