*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-020

SEPTEMBER TERM, 2012

| | |
|---|---|
| In re H.R., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Franklin Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 88-8-10-Frjv |

Trial Judge: Linda Levitt

In the above-entitled cause, the Clerk will enter:

Mother appeals termination of her parental rights to her daughter H.R., born in June 2010. On appeal, mother argues that the evidence and the findings do not support the court's conclusion that mother will not be able to parent in a reasonable time and that the court's finding that there was a change of circumstances was not supported by clear and convincing evidence. Mother also argues that the termination court lacked jurisdiction because the underlying merits decision was erroneous. We affirm.

The record reveals the following. In August 2010, when H.R. was two months old, following a temporary care hearing the superior court, family division, placed her in the custody of the Department for Children and Families (DCF) due to mother's untreated substance abuse and lack of stable housing. Following that hearing, mother, with the child, entered and then left both a residential program at the Lund Home and a residential drug treatment program. During this time, DCF placed the child in foster care.

In October 2010, the court found H.R. to be a child in need of care or supervision (CHINS) for lack of proper parental care. The initial disposition resulted in a concurrent plan of reunification or termination. The reunification plan required mother to engage in substance-abuse and psychiatric counseling, improve her parenting skills, and obtain job training and stable housing. Mother was also expected to regularly attend visits with H.R.

Citing lack of progress, DCF moved for termination in July 2011. Following a contested hearing in November 2011, the court found the following facts by clear-and-convincing evidence. The court found mother did not make progress on her reunification goals because she did not abstain from drug use, engage in substance-abuse counseling, obtain stable housing, or improve her parenting skills. The court found that although mother had access to several drug-treatment programs, mother did not complete any program, continued to use, and was hospitalized for an overdose. Because she refused to go to the Brattleboro Retreat for drug treatment and mental health treatment, mother was arrested for violating probation associated with a conviction for the sale of drugs. She bit the officer who arrested her, and was found with drugs on her person, leading to further charges of aggravated assault and drug possession. As a result of her drug use and violent behavior, in mid-2011 mother was sentenced to the Tapestry program, a residential, drug treatment program for women. She did not begin the program until

September 2011 due to major disciplinary infractions while in jail awaiting transfer to the program. At the time of the hearing, her minimum release date was August 2012. Mother made minimal progress in obtaining a stable job and housing. When DCF first set up visits between mother and H.R., mother attended about half of the scheduled visits; her drug usage prevented her from attending more. Mother's attendance at visits declined and in early 2011, she missed 17 out of 20 visits. At some visits, mother appeared impaired and stumbled, and she became agitated and angry, yelling at supervisors, which caused H.R. to cry. After she entered the Tapestry Program, the visits stopped altogether.

The court concluded that there was a change of circumstances based on mother's lack of progress in addressing her drug use and mental health issues, making improvements to her parenting skills, and finding employment or appropriate housing. The court further concluded that termination was in H.R.'s best interest. In considering the statutory factors, the court found that H.R. is not bonded to mother because of the lack of time spent together. Further H.R. has a strong bond with her foster family and feels secure with them. The court explained that H.R. needs structure and consistency and mother will not be able to resume parenting within a reasonable time given her incarceration, and the lack of any assurance that mother will be in a position to parent upon her release. Mother appeals.

When termination of parental rights is sought, the trial court must first find that there has been a substantial change in material circumstances since the prior disposition. See 33 V.S.A. § 5113; In re B.W., 162 Vt. 287, 291 (1994). This threshold exists "when the parent's ability to care properly for the child has either stagnated or deteriorated." In re J.G., 2010 VT 61, ¶ 10, 188 Vt. 562 (mem.) (quotation omitted). "Stagnation can be shown either by the passage of time with no improvement in parental capacity to care properly for the child or where the improvement is so insignificant that it is unlikely the parent will be able to resume parental duties in a reasonable time." Id. (quotations omitted). If a change in circumstances is demonstrated, the court must consider the statutory factors and decide if termination is in the child's best interests. 33 V.S.A. § 5114. Of the factors, the most important is whether the parent will be able to resume parenting duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

Mother first argues that the evidence does not support the court's finding that she would not be able to resume parenting within a reasonable period of time. Mother claims error because she contends that drug use and incarceration alone are insufficient to terminate parental rights. While some courts have found that either one—drug use or incarceration—were insufficient to terminate a parent's right to custody of their child, both situations were present in mother's case. Further, those facts were not the sole basis for the court's decision. The court properly considered whether mother's ability to parent H.R. had improved, and how mother's untreated addiction and her incarceration were relevant to this analysis.

Mother claims that her drug addiction did not result in neglect or harm to H.R. and that the court ignored evidence at the termination hearing that she was in a substance-abuse treatment program and making significant improvement. Mother highlights several findings that she claims are unsupported, and she contends those errors undermine the court's overall conclusion that she would not be able to resume parenting within a reasonable period of time. She challenges the court's findings that she was hospitalized for a drug overdose, homeless during the proceedings, and made no progress in addressing her drug use, receiving mental health counseling and improving her parenting skills. She also claims the evidence does not support

2

that she was not bonded to her daughter, and that her daughter had been in custody for only one year and two months and two weeks and not one-and-a-half years as found by the court.

We agree that some of the findings do not completely reflect the record evidence, and we detail them below. We also emphasize that "[e]ven if one or more findings is erroneous, this does not necessarily mean we will reverse the court's determination." In re B.M., 165 Vt. 194, 205 (1996). Here, we conclude that any errors are not material to the court's decision, and the supported findings are sufficient to sustain the decision. Id.

We first address mother's challenge to the court's finding that H.R. was in custody for one-and-a-half years. H.R. was taken into custody in August 2010, and the court's decision issued in December 2011. Thus, the child was in custody for less than the one-and-a-half years cited by the court. This difference is, however, slight and does not require reversal. The court's main point, which is fully supported, is that H.R. came into custody at a very young age and that a significant period of time had elapsed without improvement. The evidence supports the court's findings that H.R. needs structure and consistency and that a reasonable period of time, as measured from H.R.'s perspective, had already passed. In re J.S., 168 Vt. 572, 574 (1998) (mem.) (concluding that in light of children's age, time children had been separated from parents, and children's need for permanency, a reasonable time had already passed). Basically, H.R. had lived 90% of her life without her mother's care.

Next, mother contends that the evidence does not support the court's finding that mother was hospitalized for a drug overdose. According to mother, the hospital records demonstrate that mother was treated for seizures and there is no information that the seizures were caused by drug use. Mother's probation officer testified that the hospitalization was for a suspected overdose, but this was not confirmed with medical evidence. The court's error in reporting mother's hospitalization as due to a drug overdose is harmless. Other evidence, including the undisputed fact that mother tested positive for opiates during this period, supports the court's main finding that mother's addiction was ongoing and untreated at that time.

Mother also challenges the court's finding that she was homeless during the proceedings because mother asserts that she always had somewhere to stay. This finding was not essential to the court's decision. The court's point was that mother did not have a stable home, living at times with parents, at various treatment centers, jail or friends' houses, and this fact is supported by the evidence.

Finally, mother challenges the court's findings that that H.R. was not bonded to mother and mother did not play a constructive role in H.R.'s life. These findings are not in error. The evidence demonstrates that H.R. was taken into custody at two months of age, and since then her time with mother has been intermittent. Mother missed visits with H.R. due to her drug addiction and incarceration. Because of the lack of time together H.R. does not recognize her as mother.

Overall, the court's conclusion that mother would not be able to resume parenting within a reasonable period of time is supported by the findings, which are in turn supported by substantial evidence. The evidence supports the court's finding that mother did not make significant progress in treating her addiction, addressing her mental health issues or in her ability to parent H.R. After H.R. was taken into DCF custody, mother was unable to complete a drug-treatment program. She refused services or was removed from programs for fighting or not following rules. Mother emphasizes that she was attending a treatment and counseling program

3

in jail at the time of the final hearing, and asserts that this is evidence of her progress. The court considered this fact. The court acknowledged that mother was sentenced to a drug-treatment program in jail, and that she began it in September 2011. Although mother's participation in the program is commendable, it was not error for the court to conclude that, despite this attendance, mother had not fully addressed her drug addiction, mental health, parenting, employment and housing challenges and would not be in a position to parent H.R. in a time period that was reasonable from H.R.'s standpoint. See In re B.M., 165 Vt. 331, 337 (1996) (noting that reasonable period of time is measured from the viewpoint of child's needs). The court found that given H.R.'s young age and time in custody, it was not reasonable for her to wait until mother's release from jail expected in August 2012, at which time it was not clear mother would be able to resume parenting. See In re M.M., 159 Vt. 517, 524 (1993) (although court found that mother had made some progress in developing parenting skills, her inability to resume parenting responsibilities within reasonable time and child's need for stability supported termination of parental rights).

Mother next argues that the court's changed circumstances determination was not made by a clear-and-convincing-evidence standard because the court did not specifically so state. It is evident that the correct standard was used in this case. At the beginning of the court's opinion, it stated that all findings were made "by clear and convincing proof." There is nothing to indicate that the court used a lower standard of proof in its changed-circumstances analysis and the court was not required to repeat the clear-and-convincing-evidence standard after each finding. See In re C.L., 151 Vt. 480, 488-89 (1989) (explaining that court is not required to explicitly state standard of proof).

Finally, mother contends that at the CHINS merits decision was error because at that time the court erroneously shifted the burden of proof to mother, and made findings unsupported by the evidence. Mother contends that the court lacked jurisdiction to hear the termination proceeding because of this erroneous underlying decision. We conclude that mother's challenge to the CHINS determination is untimely. By failing to raise any objection to the CHINS decision in the family-court proceedings, mother waived the argument on appeal. The CHINS order was final and not appealed. See In re P.J., 2009 VT 5, ¶ 11, 185 Vt. 606 (mem.) (CHINS is a final order). Thus, mother's claim that jurisdiction is wanting for termination is incorrect.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice

_____
Beth Robinson, Associate Justice

4