¶ 34.
Dooley, J.,
concurring. My vote to affirm depends upon an evaluation of the statutory scheme that demonstrates that the trial court order protects the children and allows a full range of permanency options. Mother argues in her brief that the failure to award either the Department for Children and Families (DCF) or the conditional custodian residual parental rights or to provide that the transfer of custodial rights was “without limitation as to adoption” leaves no person or agency empowered to consent to adoption. Mother argues that, as a result, there actually has been no termination of parental rights, only a new conditional custody order, and there can be no adoption. The majority partially answers this argument but ultimately relies on our holdings that termination of parental rights can be ordered even if there is no permanency option immediately available to the child and that parents after termination of their parental rights have no standing to complain about disposition. I do not think the majority opinion fully answers the question presented.
¶ 35. Mother is correct that courts generally, upon termination of parental rights, transfer custody and residual parental rights to DCF “without limitation as to adoption.” The terms “transferring ... all residual parental rights” and “without limitation as to adoption” are found in the juvenile statutes. See 33 V.S.A. § 5318(a)(5) (stating that at disposition, court may enter order “terminating all rights and responsibilities of a parent by transferring legal custody and all residual parental rights to the Commissioner without limitation as to adoption”); see also id. § 5114(a) (stating that “any time a petition or request to termin *60 ate all residual parental rights of a parent without limitation as to adoption is filed by the Commissioner or the attorney for the child,” court must evaluate statutory best-interest factors).
¶ 36. The court used part of this language with respect to R.B. in a February 2015 order once her father’s rights were terminated, transferring custody of R.B. to Ms. Hall “without limitation as to adoption.” The court also used this language in its first amended TPR order with respect to O.B. and K.C. It then granted the children’s motion for relief from judgment, however, and struck this language. It placed the children in Ms. Hall’s custody subject to conditions and directed that they remain in her custody “during the pendency of these proceedings absent further order of [the] court.” The court did not place O.B. and K.C. in Ms. Hall’s custody “without limitation as to adoption,” and it did not expressly transfer parents’ residual parental rights to Ms. Hall. The question for me is whether these omissions leave the children in some kind of limbo with no possibility of permanency and without a caretaker who can exercise the responsibilities of a parent.
¶ 37. The prospect of legal limbo was probably created in part because of the statutory language. Section 5318(a)(5) provides as a disposition alternative “[a]n order terminating all rights and responsibilities of a parent by transferring legal custody and all residual parental rights to the Commissioner without limitation as to adoption.” Section 5318(a)(7) provides as another alternative “[a]n order transferring legal custody to a relative or another person with a significant relationship with the child. The order may be subject to conditions and limitations and may provide for parent-child contact with one or both parents.” In essence, the drafting creates the argument that subdivision (5) provides the exclusive means of terminating parental rights and was not used here. That reading is reinforced by § 5318(b), which provides: “If the Court orders the transfer of custody pursuant to subdivision (a)(2), (4), or (5) of this section, the Court shall establish a permanency goal for the minor child and adopt a case plan prepared by the Department which is designed to achieve the permanency goal.” Thus, the argument goes that the court in this case ultimately chose the (a)(7) disposition alternative, and that alternative is not intended to bring permanency to the child.
¶ 38. As the majority explains, our recent decision in In re J.G., 2010 VT 61, 188 Vt. 562, 2 A.3d 817 (mem.), is against the above *61 interpretation. This is because § 5318(a) begins the list of disposition alternatives with the following sentence: “At disposition, the Court shall make such orders related to legal custody for a child who has been found to be in need of care and supervision as the Court determines are in the best interest of the child . . . J.G. holds that, because the list in § 5318(a) is not exclusive, the court has the power to terminate parental rights and transfer custody and those rights to another person with a significant relationship with the child, rather than to DCF, where the court finds such a disposition is in the best interest of the child. Id. ¶ 14. Mother argues that J.G. does not govern this case because, in that case, parental rights were explicitly transferred to the new caretaker, and here they were not.
¶ 39. Mother’s argument leads me to a second point about § 5318(a) — it is about custody and only secondarily about termination of parental rights or its effect. Thus, we have to look elsewhere to determine the effect of a termination of parental rights and specifically whether a termination of residual parental rights, without a transfer of those rights to some person or entity, creates an unacceptable legal limbo or defeats permanency for the child.
¶ 40. The conditional custody order gives Ms. Hall “legal custody” of the children, subject to conditions, and requires that Ms. Hall allow the children’s attorney and guardian ad litem to meet with the children at reasonable times and places with reasonable advance notice to the custodian. The term “legal custody” gives Ms. Hall the right to routine daily care and control over the children; the right to determine where and with whom the children will live; the authority to consent to major medical, psychiatric, and surgical treatment for the children; the responsibility to protect and supervise the children and provide the children with food, shelter, education, and ordinary medical care; and the authority to make decisions that concern the child and are of substantial legal significance, including the authority to consent to civil marriage and enlistment in the armed forces; and the authority to represent the children in legal actions. 33 V.S.A. § 5102( 16)(A)(i)-(iv).
¶ 41. When Ms. Hall first obtained legal custody of the children, it was subject to parents’ residual rights and responsibilities because termination of those rights had not occurred. Id. § 5102(16)(B). Those rights and responsibilities are the right to *62 reasonable parent-child contact, the responsibility for support, and the right to consent to adoption. Id. § 5102(26). They have now been terminated. Putting aside the right to consent to adoption, discussed below, the termination of the right to contact and the responsibility for support do not create a legal limbo. The termination of the legal right to contact was done to protect the child. The termination of the responsibility of support is offset by the new support obligation of the legal custodian. The fact that this right and this responsibility were not formally transferred to the legal custodian in this case is of no consequence.
¶ 42. Parents suggest that the critical parental right is the power to consent to the children’s adoption, and that the TPR order therefore does not provide the permanence that a “true” termination would provide. This argument might be persuasive if our adoption law provided that either a parent — or DCF or a person to whom the parental right has been transferred — must consent to the adoption. In that circumstance, the failure to transfer residual parental rights to a person or DCF after termination of the parents’ rights would mean that adoption is prohibited.
¶ 43. The law does not so provide. As parents acknowledge, their consent to the adoption is not required as their rights have been terminated. See 15A V.S.A. § 2-402(a)(2) (stating that “[c]on-sent to an adoption of a minor is not required of: a person whose parental relationship to the minor has been judicially terminated or determined not to exist”). In fact, under the adoption law, they are no longer parents. See id. § 1-101(13). There is no requirement for consent by the person to whom residual parental rights have been transferred. In fact, the concept of transferring residual parental rights on termination is not reflected in the adoption statutes. The fact that there has been no transfer does not impact adoption rights.
¶ 44. Nor is there any significance under the adoption statute of the absence of the term “without limitation as to adoption” in the court’s order transferring custody to a legal custodian.[5] The *63 termination of parental rights alone accomplishes all that is needed under the adoption statute.
¶ 45. I recognize that the absence of need for parental consent also means that no person or entity may place a child for adoption if there is no guardian for the child and DCF is not authorized to place the child for adoption. Id. § 2401(a). This might be seen as a legal limbo for the child, albeit because of the transfer of custody to the legal custodian and not the wording of such order. Although the legal custodian cannot place the child for adoption, a term that applies when another adoptive parent is selected, id. § 1-101(15), the legal custodian can petition to adopt the child if the custodian has physical custody for six months or more. Id. § 3-301(a)(2). That is the situation here.
¶ 46. My understanding of the statutes is consistent with the testimony presented at the January 9, 2015 motion hearing. The district director for the Barre DCF office testified that if parents’ rights are terminated and the children are placed in the conditional custody of an individual, there would be no impediment to the children being adopted, subject only to the individual’s ability to successfully be home studied by an adoption social worker. The director stated that it had been anticipated in this case that Ms. Hall would adopt the children and would maintain conditional custody during that process. The children’s attorney similarly stated his belief that the plan throughout these proceedings was for Ms. Hall to adopt the children.
¶ 47. I recognize that my conclusion renders superfluous the transfer, or absence of transfer, of residual parental rights to a legal custodian or whether legal custody is ordered “without limitation as to adoption.” These words appear in the juvenile law only when custody is transferred to DCF. I think the Legislature wanted to be clear about DCF’s powers because the agency is a creature of statute and has only such powers as the statutes provide. Further, DCF’s power to place a child for adoption with another depends upon it having been “expressly authorized to place the minor for adoption by a court order terminating the relationship between the minor and the minor’s parent or guardian.” Id. § 2401(a)(4). Under the statutory scheme, similar power or authority statements are unnecessary with respect to a legal custodian who desires to adopt the child. I urge trial judges not to make such statements when, following termination of parental rights, the court is transferring custody to a legal custodian and not to DCF.
*64 ¶ 48. I want to be clear that I am not stating that the legal custodian has an easy path to adoption, a distinctly different question. Irrespective of the position of DCF, the legal custodian in this case has standing to petition for adoption under 15A V.S.A. § 3-301(a)(2). In any event, the facts before the court were that DCF would support and aid the adoption by the legal custodian.
¶ 49. I am authorized to state that Justice Robinson joins in this concurrence.

 The use of the language “without limitation as to adoption” with respect to DCF appears to be an authorization for DCF to place the child for adoption. 15A V.S.A. § 2-101 (a)(4). The term “place for adoption” means ‘To select a prospective adoptive parent for a minor and transfer physical custody of the minor to the prospective adoptive parent.” Id. § 1-101(15).