*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-400

MARCH TERM, 2017

In re I.K. and J.K., Juveniles　　　　　　　}　　APPEALED FROM:
　　　　　　　　　　　　　　　　　　　　　　}
　　　　　　　　　　　　　　　　　　　　　　}　　Superior Court, Windsor Unit,
　　　　　　　　　　　　　　　　　　　　　　}　　Family Division
　　　　　　　　　　　　　　　　　　　　　　}
　　　　　　　　　　　　　　　　　　　　　　}　　DOCKET NO. 4/5-1-13 Wrjv

　　　　　　　　　　　　　　　　　　　　　　Trial Judge: M. Kathleen Manley

In the above-entitled cause, the Clerk will enter:

Father appeals termination of his parental rights to his two children I.K. and J.K., born in December 2010 and January 2012 respectively. On appeal, father argues that the evidence does not support the court's finding of changed circumstances, that the case plan failed to have specific goals for father, and that the evidence did not support a finding by clear and convincing evidence that father would not be able to resume parenting in a reasonable period of time. We affirm.

The Department for Children and Families (DCF) began working with this family in 2011. This case began in January 2013 when the children were removed from parents' care based on concerns over parents' untreated mental health needs, domestic violence, and substance abuse. Parents stipulated that I.K. and J.K. were children in need of care or supervision (CHINS) in March 2013. A disposition order was entered in May 2013 and returned the children to parents' care pursuant to a conditional custody order. The conditional custody order was amended in October 2013 to vest custody solely with father. In July 2014, the children were removed from father's care based on a finding that his actions jeopardized the children's safety. An amended case plan was filed in September 2014 recommending concurrent goals of reunification or adoption. Parents objected to the plan and a contested hearing was set for December 2014. The hearing was canceled after DCF indicated it was filing a new plan recommending adoption.

DCF filed a petition to terminate parental rights in January 2015. Hearings were held in January and March 2016. Based on the evidence, the court found the following. The goals for parents have remained the same throughout the case—obtain mental-health stability with adequate and ongoing treatment, address violence in the home, and address substance abuse. Mother's compliance has been sporadic. Mother failed to adequately address her substance-abuse issues, did not recognize the impact of her behavior on the children, would not execute releases for DCF, and by the time of the final hearing had not had contact with the children since October 2014. She did not attend the termination hearing and did not appeal the termination order.

The parties had a volatile relationship, which required police intervention. Father was arrested for assaulting mother, but he denied harming her. He refused to attend a batterer's

intervention program. He did acknowledge that the relationship was contentious and required police intervention many times. After the children were removed from his care in July 2014, father's mood deteriorated, and he voluntarily admitted himself to the Brattleboro Retreat for psychiatric stabilization. After discharge, he initially had visits with the children at their daycare, a relative's home, and a visitation center. In the fall of 2014, he became aggressive, and the daycare asked him to leave, removing this as a possible place for contact. He also displayed aggressive behavior at his father's house in March 2015 and could no longer visit the children there. Father signed only limited releases, preventing DCF from fully determining the extent of his treatment to ensure that his mental health was stabilized. Father's last contact with the children was in May 2015. He was provided with the possibility of supervised contact, but declined. Father's condition further declined, and in August 2015, he went to Valley Vista for detox and treatment. He expressed frustration at DCF's failure to return his calls and said he would "pull a Barre on them," a reference to a DCF caseworker shot and killed in that city. By the time of the final hearing, father had been living with his father and had maintained employment. He was on a maintenance suboxone and had tested positive twice.

The children are in a preadoptive home. J.K. had some serious behavioral issues. He was so aggressive at daycare that he required a full-time aide. By the time of the final hearing, he had made enough progress toward being able to join other children. I.K. has adjusted well to her foster home, and her foster parents have met all her needs.

The court found that there was a change of circumstances due to stagnation. Even though it appears father is beginning to stabilize his life, he was still in the early stages of obtaining counseling and addressing his substance abuse and continued to lack understanding of how his behaviors had impacted the children. The court further found that termination was in the children's best interests. Father did not currently play a role in their lives. In light of the children's young age, length of time out of the home, and their need for stability, the court found that there was no likelihood that he would be able to resume parenting within a reasonable period of time. Father filed this appeal from the termination order.

To terminate parental rights where there is a prior disposition order, "the court must find that there has been a substantial change in material circumstances since the disposition order, and that termination is in the best interest of the children." In re A.F., 160 Vt. 175, 177 (1993); see 33 V.S.A. §§ 5113(b) (allowing modification of order upon showing of changed circumstances), 5114(a) (listing best-interests factors). The court's findings of fact "will stand unless clearly erroneous, and conclusions of law will be upheld if supported by the findings." In re A.F., 160 Vt. at 177.

On appeal, father first argues that the court erred in concluding that there had a been a change of circumstances. A change of circumstances is demonstrated where "a parent's ability to care for a child has either stagnated or deteriorated over time." In re D.S., 2016 VT 130, ¶ 6 (quotation omitted). Father asserts that there was no change in circumstances between July 22, 2014, which he states was the date of the most recent disposition order, and January 2, 2015, when the petition to terminate parental rights was filed.

We conclude that father's narrow date range for considering whether a change of circumstances has occurred is unsupported by fact. The most recent disposition order was issued

May 2013.  The July 2014 order changed the children's custody status, but it was not a new disposition order.  Therefore, the critical period would be since May 2013.

Moreover, father's assertion that the trial court may look only at the factual circumstances between the most recent disposition order and the filing of the termination petition is not supported by our law.  Modification of a disposition order can occur only "on the grounds that a change in circumstances requires such action to serve the best interests of the child."  33 V.S.A. § 5113(b).  We have explained that this means determining whether a parent has shown "improvement substantially conformed with the expectations at the time of the CHINS adjudication and with [DCF's] case plan."[1]  In re S.W., 2003 VT 90, ¶ 6, 176 Vt. 517 (quotation omitted).  For this reason, this Court has looked at the totality of facts continuing until the time of the termination hearing.[2]  See id. ¶ 7 (considering facts from time of CHINS adjudication until final hearing).

This approach is wholly consistent with the purposes of the juvenile protection statutes to separate a child "only when necessary to protect the child from serious harm or in the interests of public safety" and to "ensure that safety and timely permanency for children are the paramount concerns in the administration and conduct of proceedings."  33 V.S.A. § 5101(a)(3), (4).  As this Court has explained, "[t]he essential point of requiring that a parent progress in meeting his or her goals toward reunification within a reasonable period of time is to provide permanence and stability in the life of a child."  In re J.G., 2010 VT 61, ¶ 11, 188 Vt. 562 (mem.).  Therefore, to determine whether there is indeed a change of circumstances, the court must consider at the time of the final hearing whether the evidence demonstrates a lack of improvement in the parent's parenting skills over time.  This is consistent with the overall purpose of protecting children and working towards stability for children.  It ensures that children are protected if new evidence comes to light and can benefit parents where improvement is made after the filing of the petition, but prior to the hearing.  Parents often offer evidence at the final hearing concerning improvements that have occurred subsequent to the time the termination petition was filed.  See In re A.F., 160 Vt. 175, 181 (1993) (considering mother's argument that she had made progress in parenting skills between time of disposition order and termination hearing).  It also avoids unnecessary delays that could be occasioned by the need for DCF to file a new petition and the court to hold an additional hearing so that evidence arising after the initial petition was filed could be considered.[3]

---

[1] Many cases refer to the time period since the CHINS adjudication presumably because the disposition was close in time to the CHINS order.  The statute refers to change circumstances to modify an existing order, therefore if there is a subsequent disposition order, the change of circumstances would have to occur subsequent to that disposition order.

[2] Certainly, the petition to terminate must be based on sufficient facts to support changed circumstances when it is filed.

[3] We also note that the statute allows the court to make a finding of changed circumstances on its own motion.  33 V.S.A. § 5113(b).  Therefore, even if the court was limited to looking at the evidence as it existed at the time DCF filed its motion, if there was important evidence that developed after the time DCF's motion was filed, the court could base the changed circumstances conclusion on its own motion.

Here, even if the evidence is considered as of January 2015, when DCF filed the termination petition, that evidence supports the court's finding that there was a change of circumstances. At that time, mother had not engaged in treatment or counseling and had not had contact with the children for two months. Father had displayed aggressive behavior and been banned from the children's day care. Father was not in substance-abuse or mental-health treatment and had not signed any releases to confirm his treatment.

Father next argues that DCF prematurely filed a petition to terminate and failed to provide father with adequate notice of DCF's expectations for father. The timing of the case plan is important to father's argument. The initial case plan was adopted in April 2013. In September 2014, DCF filed a revised case plan, which had a concurrent goal of reunification and adoption and an estimated date for achieving the case plan of April 2015. Parents contested it, but before the contested hearing could be held, DCF withdrew that plan and filed a motion to terminate parental rights in January 2015. According to father, DCF was required to wait until after April 2015 to file a termination petition. Father relies on In re D.S., 2016 VT 130. In that case, the child was adjudicated CHINS in September 2014, and the initial disposition, entered in October 2014, had a case plan goal of reunification or adoption by March 2015. DCF amended the case plan in December 2014 and filed to terminate in January 2015. This Court concluded that DCF's decision to move to an adoption-only goal several months before the timeframe contemplated in the approved case plan was premature because there was inadequate time for mother to demonstrate progress with the case plan and the change in goal staffing inhibited her progress. Id. ¶ 14. Father's situation in this case is very different from the mother in In re D.S.. Unlike in In re D.S., the September 2014 revised case plan was not the initial case plan in this case—the initial case plan was approved in April 2013—and the plan was a proposal submitted by DCF and had not been approved or adopted by the court. Most importantly, unlike the mother in In re D.S., father had already had a significant period of time to work on reaching the goals set forth in the case plan, and there was no change in the services he was provided due to staffing changes. The change in the venue of father's visits in the fall of 2014 arose due to father's aggressive behaviors, both at the daycare and in his father's home, not because of DCF's staffing decisions.

Father also contends that due to the lack of an updated case plan he was unsure of DCF's expectations. The record demonstrates that father received notice of what DCF expected of him. The evidence supports the trial court's finding that throughout this case, the goals for parents "have remained the same, essentially to obtain mental health stability with adequate and ongoing treatment, address issues of violence in the home" and to address substance abuse.

Finally, father argues that the State failed to establish by clear and convincing evidence that father would not be able to resume parenting within a reasonable period of time. In determining the best interests of the children, the court was required to consider all the statutory factors, including "the likelihood that the parent will be able to resume or assume parental duties within a reasonable period of time." 33 V.S.A. § 5114. This is the most critical factor, and the "reasonableness of the time period is measured from the perspective of the child's needs." In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29.

Father points to some facts, which he claims support that he was working towards being able to resume his parental duties. The court's finding that a parent will not be able to resume parental duties within a reasonable period of time "must be supported by clear and convincing

4

evidence." In re A.F., 160 Vt. at 177-78. "When findings are attacked on appeal, our role is limited to determining whether they are supported by credible evidence." Id. at 178. It is up to the trial court to determine the witnesses' credibility and the weight of the evidence. Id. Here, the evidence supports the court's finding that despite father's efforts, there was no likelihood he would be able to resume parenting within a reasonable time as measured from the needs of the children. Father's mental illness, his aggression, and his substance abuse were all barriers to reunification. The evidence demonstrates that father was in the early stages of getting mental-health counseling and addressing his substance abuse. Father exhibited aggressive behaviors within a year prior to the termination hearing, and failed to understand or accept how his behavior impacted others, particularly his children. He had not had contact with the children since June 2015. On the other hand, the children had been out of the home for some time, were young, and had needs for stability and permanence. These facts all support the court's finding that father would not be able to parent within a reasonable time as measured from the needs of his children.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice