VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      23-AP-343



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MARCH TERM,   2024

| | |
|---|---|
| In re L.D., Juvenile<br>(A.W., Mother\*) | } APPEALED FROM:<br>}<br>} Superior Court, Chittenden Unit,<br>} Family Division<br>} CASE NO. 22-JV-01490<br>Trial Judge: Kirstin K. Schoonover |

In the above-entitled cause, the Clerk will enter:

Mother appeals termination of her parental rights to L.D., born in April 2009.[1]  On appeal, mother argues that the court erred in finding that her progress stagnated and that she would not be able to resume parenting within a reasonable time.  We affirm.

The court found the following.  In January 2021, when L.D. was in father's sole custody, the State filed a petition alleging that L.D. was a child in need of care or supervision (CHINS) based on reports that father physically abused L.D. by beating her with the handle of a broom.  The Department for Children and Families (DCF) had received sixteen reports over the prior ten years regarding concerns about the family including physical abuse, conditions in the home, neglect, medical neglect, and truancy.  The court initially granted custody of L.D. and her two siblings to mother under a conditional custody order (CCO).  Soon thereafter, because of mother's noncompliance with the CCO, the court placed custody with DCF in February 2021. L.D. was placed in a foster home where she has remained since.

Father stipulated to the merits of the CHINS petition, and the resulting disposition case plan had a goal of reunification with father.  Mother did not object to that disposition or appeal the disposition order.  Mother also did not seek to amend the case plan and have herself added as a reunification option for L.D.

---

[1] Father relinquished his parental rights conditioned on termination of mother's rights.

The goals for mother included participating in parent-child contact, engaging with parent-skills coaching, obtaining and engaging in mental-health counseling, attending scheduled medical, dental, and educational meetings, and providing drug screenings.

The State moved to terminate parents' rights in January 2023. Following a hearing, the court found that there was a change in circumstances due to mother's stagnation. Although mother made some progress by obtaining housing and engaging with DCF, she did not progress in other areas. She engaged in individual counseling, but it stopped due to mother's nonattendance. She did not provide urinalysis for drug screening or participate in Family Time coaching. Importantly, mother was inconsistent with visits, and this damaged her relationship with L.D. Mother did not have insight as to how her behaviors damaged her relationship with her daughter.

Mother had a historically difficult relationship with L.D. Prior to the CHINS proceedings, when L.D. lived with mother she experienced medical and educational neglect, and L.D. was anxious in mother's care. During the pendency of the CHINS proceedings, mother's visits with L.D. were inconsistent and L.D. did not enjoy her time with mother because it was often chaotic. Mother and L.D. planned a special party for L.D.'s birthday, but mother did not show up or contact L.D. to indicate she would not be there. After that incident, L.D. stopped all contact with mother. DCF and L.D.'s foster mother encouraged L.D. to visit mother but L.D. refused to see her or participate in family therapy. L.D. provided a statement to the court, expressing her desire to be adopted. L.D. explained that she does not believe mother is reliable, consistent, or mentally stable and that L.D. seeks permanency. Mother did not take responsibility for her estrangement with L.D. and believed the court should require reunification. Mother did not appear for the final hearing in person as directed. The court required mother's attorney to go to mother's home and mother agreed to appear remotely.

In addition to mother's stagnation, the court found that there was also a change of circumstances due to two other changes in L.D.'s situation. First, the court found changed circumstances because reunification with father was contemplated by the case plan, but father relinquished his parental rights. Second, the court found a change due to the altered relationship between L.D. and mother, and L.D.'s unwillingness to participate in a relationship with mother.

The court analyzed L.D.'s best interests in light of the statutory factors in 33 V.S.A. § 5114. L.D. thrived in foster care, excelling in academics and in sports. L.D. had a strong relationship with her foster parents and their extended family. L.D. maintained contact with her siblings and with father. She had no in-person contact with mother since April 2022, and had no relationship with mother or mother's community. The court found that mother would not be able to resume parenting within a reasonable time given her lack of relationship with L.D. and inability to understand L.D.'s needs or provide consistency and stability. Moreover, mother did not play a constructive role in L.D.'s life. L.D. refused to speak with mother and the thought of contact with mother produced anxiety and anger. Mother appeals.

When the State moves to terminate parental rights after the initial disposition, the court must first find that there is a change of circumstances, 33 V.S.A. § 5113(b), and second, "that termination of parental rights is in the child's best interests." In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.); see 33 V.S.A. § 5114(a) (requiring court to consider best interests of child when

petition to terminate is filed). In assessing the child's best interests, the court must consider the statutory factors. 33 V.S.A. § 5114(a). The most important factor is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

On appeal, mother argues that the court erred in finding that her progress stagnated because she contends that DCF did little to assist mother with resuming her parental duties and therefore the lack of progress was due to factors outside her control.

The threshold finding of a change in circumstances is often demonstrated when a parent's ability to care for a child has stagnated or deteriorated, which can be shown "by the passage of time with no improvement in parental capacity to care properly for the child or where the improvement is so insignificant that it is unlikely the parent will be able to resume parental duties in a reasonable time." In re J.G., 2010 VT 61, ¶ 10, 188 Vt. 562 (mem.) (quotation omitted). Termination is not appropriate when the lack of progress is caused by factors beyond parents' control. See In re S.R., 157 Vt. 417, 421-22 (1991).

Mother asserts that the court found that DCF had not provided her with the support necessary to resume parenting L.D. by failing to set up family therapy services with L.D. Moreover, mother states that she had no meaningful way to comply with the case plan because DCF would not enforce or facilitate contact with L.D. when L.D. refused to visit with mother.

Here, although the court found that DCF could have provided mother with greater support, the court found that mother contributed to her lack of progress in her ability to parent L.D. The evidence supports the court's finding that mother's lack of progress was attributable to her own conduct. DCF made several referrals for mother to engage in services, but mother did not follow through. DCF referred mother to a parenting class aimed at parenting teens and mother did not complete it. DCF provided mother with Family Time coaching, but she was discharged for lack of attendance. Mother was discharged from her individual counseling for lack of attendance. Mother also did not consistently or reliably attend visits, negatively impacting her relationship with L.D. Finally, mother did not accept responsibility for her role in the estrangement between her and L.D. These findings all support the court's determination that there was a change of circumstances due to stagnation.[2]

In a related argument, mother contends that the court had no way to determine whether mother could resume parental duties in a reasonable time because mother did not have adequate

_____

[2] The family division found two other bases for changed circumstances—father's relinquishment of his parental rights when the plan was for reunification with father and L.D.'s decision not to participate in a relationship with mother. See In re D.C., 2012 VT 108, ¶ 17, 193 Vt. 101 (holding that there was a change of circumstances where disposition called for reunification of father and father voluntarily relinquished his parental rights and grandmother, who had assumed custody, died). We need not consider whether these changes also provide a sufficient basis to modify the existing order because mother's lack of progress was a sufficient basis to find changed circumstances.

time or support to complete the goals in the case plan. As detailed above, DCF provided mother with referrals and services and mother chose not to participate or not to consistently visit with L.D. Moreover, even though L.D. decided not to attend family therapy or visit with mother, DCF continued to encourage L.D. to visit with mother. The record supports the court's finding that mother's own actions in failing to attend visits consistently and engage with L.D. in a reliable fashion caused the breakdown in her relationship with L.D. This in turn supports the court's determination that mother would not be able to parent in a reasonable time as measured from L.D.'s perspective.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Harold E. Eaton, Jr., Associate Justice

Nancy J. Waples, Associate Justice