VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      25-AP-052



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

AUGUST TERM,   2025

| | |
|---|---|
| In re J.C., Juvenile<br>(M.C., Father*) | } APPEALED FROM:<br>}<br>} Superior Court, Chittenden Unit,<br>} Family Division<br>} CASE NO. 21-JV-00815<br>Trial Judge: Kate T. Gallagher |

In the above-entitled cause, the Clerk will enter:

Father appeals a family court order terminating his parental rights to his son, J.C., who was born in May 2014.  On appeal, father argues that the evidence does not support the court's findings that father's progress stagnated and that father would not be able to assume parenting J.C. within a reasonable time.  We affirm.

The court found the following by clear and convincing evidence.  J.C.'s legs were amputated below the knees due to a birth defect and he uses prostheses.  J.C. was in the custody of the Department for Children and Families (DCF) for a period after his birth due to concerns about parents' substance use and domestic violence.  After J.C. left DCF custody, mother was his primary caregiver.[1]  J.C. was again in DCF custody in 2018 due to concerns about substance use and domestic violence.  At the time, mother had a new partner.  J.C. returned to mother's care in December 2020.  In June 2021, the State initiated this case alleging that J.C. was a child in need of care or supervision (CHINS).  Mother, as the custodial parent, stipulated to the merits of the petition.  The court granted DCF custody and J.C. was placed with his maternal grandparents.

At the time, father was not living with J.C. and played no parental role.  Father had not had contact with J.C. since mother began her relationship with her new partner.  Father was struggling with substance use and lacked stable housing.  Father engaged in aggressive conduct resulting in arrests and criminal charges.  The court adopted a disposition case plan in early 2022 that called for reunification with mother or father.  The plan required father to work towards sobriety, engage in mental-health and domestic-violence treatment, obtain stable housing, maintain stable income, engage in shared parenting, be law abiding, attend J.C.'s school meetings for his individual education plan, attend visits with J.C., and maintain contact with

---

[1]  Mother's parental rights were terminated in a separate order.  In re A.C., No. 24-AP-345 (Vt. Mar. 14, 2025) (unpub. mem.) [https://perma.cc/SP8B-N7NH].

DCF. In December 2022, DCF changed the permanency goal to termination of parents' rights. Due to parents' lack of progress, the State filed petitions to terminate parents' rights in January 2023.

Following a contested hearing, the court found that there was a change of circumstances due to father's stagnation. The court acknowledged that father made progress towards some of the goals in the case plan but found that progress was limited and had only begun in the final year of the case's duration. Father had struggled with substance use since the age of thirteen and was engaging in drug use after J.C.'s birth. Father was using drugs and alcohol during the pendency of the CHINS proceeding and did not obtain treatment until October 2023, when he entered a residential-treatment program. Father testified that he did not use illicit drugs or alcohol after that. At the time of the final hearing, he was engaged in substance-use treatment and taking medication-assisted treatment.

In other areas of concern, there was little progress. Father was unable to find permanent housing and was living with his partner's parents. He was diagnosed with post-traumatic stress disorder, oppositional defiance disorder, and borderline personality disorder. He did not, however, seek mental-health treatment. Although he attended a clinic for medication-assisted treatment, he did not use available therapeutic resources. He denied engaging in domestic violence and did not participate in counseling. He had visits scheduled with J.C. weekly but was not consistent in his attendance. Father's late cancellations caused J.C. great distress. Father's attendance became more consistent in the final months before the termination hearing, but he still did not progress to more visits and never independently cared for J.C. Father did not make progress towards taking responsibility for J.C.'s medical and educational needs. Other than one meeting, he did not attend meetings with J.C.'s school or teachers and had almost no involvement with J.C.'s doctors on J.C.'s physical and mental-health issues.

The court further determined that termination was in J.C.'s best interests. J.C. had mental-health struggles and required significant help to achieve progress with his education. He required constant attention, consistency and structure. Father loved him but had not engaged in daily parenting and his interactions with father were limited. J.C.'s grandparents provided J.C. with attention, consistency, and structure. He was strongly bonded to them. He was adjusted to his current life with his grandparents. He engaged in activities and sports and did well in school despite his physical and mental-health struggles. Weighing most heavily in favor of termination, father would not be able assume parenting J.C. within a reasonable time as measured from J.C.'s perspective. Father did not address his own mental-health issues or past domestic violence. He lacked stable housing and did not have the ability or stability to deal with J.C.'s past trauma and high level of need. Therefore, the court granted the petition to terminate father's parental rights. Father appeals.

When the State moves to terminate parental rights after the initial disposition, the court must first find that there is a change of circumstances, 33 V.S.A. § 5113(b), and second, "that termination of parental rights is in the child's best interests." In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.). In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639, (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

On appeal, father first argues that the court erred in finding that there was a change in circumstances due to stagnation. "Stagnation can be shown either by the passage of time with no improvement in parental capacity to care properly for the child or where the improvement is so insignificant that it is unlikely the parent will be able to resume parental duties in a reasonable time." In re J.G., 2010 VT 61, ¶ 10, 188 Vt. 562 (mem.) (quotation omitted). Father contends that at the time of the final hearing, he was making progress towards several goals in the case plan. He highlights that he maintained his sobriety since leaving Valley Vista in late 2023. He also challenges several findings as unsupported by the evidence. He claims that he had positive visitation with J.C. and desired increased visitation. He further asserts that the court incorrectly found that he had not engaged in mental-health treatment because he obtained a prescription for an anti-depressant and engaged in counseling. Finally, he claims that he secured housing with family.

The record supports the court's findings. As to visits, the evidence demonstrated that father did not attend visits consistently and this negatively impacted J.C. J.C.'s DCF caseworker testified that father's missed visits impacted J.C. harshly and he became very upset. Although father may have sought more visits, DCF acted within its discretion in declining to so increase them given father's inconsistent attendance and the negative impact on J.C.'s well-being. The evidence also supports the court's finding that father did not address his mental-health needs. Although he attended a clinic for medication treatment, he did not use the therapeutic resources available. He was better able to control his emotions but avoided communication that was difficult, using his partner as a buffer. He acknowledged that he had been angry and engaged in criminal acts, including violence, but did not engage in domestic-violence counseling. As to housing, father was living with family, but this was not permanent, and the evidence showed that obtaining stable housing was a persistent issue throughout the pendency of the case.

Overall, the evidence supported the court's decision regarding father's stagnation. The court acknowledged that father had made progress in addressing his drug use in the final year before the termination hearing. The court credited father for this work but found that this recent progress did not preclude a finding of stagnation where father made no progress for much of the case and continued to lack progress in other key areas. "The essential point of requiring that a parent progress in meeting his or her goals toward reunification within a reasonable period of time is to provide permanence and stability in the life of a child." Id. Here, although father had made some strides towards sobriety, he continued to lack stability in other areas, particularly relating to addressing housing, his mental health, consistent visitation, and involvement with J.C.'s educational and medical providers. See In re J.J., 143 Vt. 1, 6 (1983) (explaining that "while parental improvement is a factor to consider, the real test is whether there is a reasonable possibility of reuniting parent and child within a reasonable period of time").

Next, father argues that termination was not in J.C.'s best interests because the evidence did not support the court's determination that he was not able to meet J.C.'s medical needs within a reasonable time. The most important of the statutory best-interests factors is the likelihood that a parent will be able to assume parenting within a reasonable period of time. In re J.B., 167 Vt. 637, 639 (mem.); 33 V.S.A. § 5114(a)(3). "The reasonableness of the time period is measured from the perspective of the child's needs, and may take account of the child's young age or special needs." In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29 (citation omitted).

Father contends that the evidence did not support the court's finding that he made no progress toward meeting J.C.'s medical or educational needs. He asserts that he benefitted from participating in several programs, which addressed looking after a child's physical care and child

development in general. He also claims that he was not more involved with J.C.'s care because he was not provided with the dates of J.C.'s medical appointments or school meetings, and DCF failed to hold shared parenting meetings, which hampered father's improvement. He claims that his testimony demonstrates that he understands J.C.'s medical condition and is willing to work to learn about J.C.'s care regimen.

The evidence supports the court's findings. Father did not act as a full-time parent at any point in J.C.'s life. Although father claims that he was unaware of times for medical appointments or school meetings, this was because foster mother initially made father aware of these appointments but stopped doing so after he did not attend any of the appointments. Father did not take initiative to ask about these topics or inquire about appointments. During the pendency of the case, father made little effort to involve himself in J.C.'s medical or educational needs. Father testified that he had not been involved in J.C.'s school at all and that he was not involved in J.C.'s counseling and did not know the identity of J.C.'s counselor.

The trial court acted within its discretion in this case. The court weighed the statutory factors and concluded that despite some improvement towards sobriety and consistent visitation, termination was in J.C.'s best interests. Most importantly, J.C. required stability and consistent care from an attentive caregiver and father would not be able to provide this within a reasonable time.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
Nancy J. Waples, Associate Justice