*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-354

DECEMBER TERM, 2015

| | |
|---|---|
| In re H.M., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Addison Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 114-12-14 Anjv |
| | |
| | Trial Judge: Robert A. Mello |

In the above-entitled cause, the Clerk will enter:

Mother appeals from a superior court order terminating her parental rights to the minor H.M. Mother contends the court failed to address the causes of the CHINS adjudication that needed to be remedied within a reasonable time. We affirm.

The facts, which are undisputed, may be summarized as follows. H.M. was born in September 2014 and was taken into the custody of the Department for Children and Families in October 2014, when he was about five weeks old. He was placed with a foster family, where he has since remained.

Mother participated in Family Time supervised visits with the child for about three weeks in October 2014. By November 2014, she had stopped attending visits and refused to engage with DCF services. At the time of the final hearing in August 2015, she had not seen H.M. since November 2014, a period of over nine months.

A CHINS petition was filed in December 2014, and the court issued a temporary care order in early January 2015. The court issued a genetic testing order for the child's putative father, but testing did not occur. Following a number of status conferences, and an intervening order in a pending criminal matter finding that mother was incompetent to stand trial, H.M. was adjudicated CHINS in April 2015 based the court's findings that mother could not be located when the petition was filed, lacked stable housing, and was not available or able to parent the child.

A disposition plan filed in May 2015 recommended adoption as a goal, and set forth a range of services and expectations for mother, including requirements that she obtain safe and stable housing, undergo a psychological assessment and mental health treatment, and re-engage with Family Time coaching. A petition to terminate parental rights was filed in June 2015, and the court held an evidentiary hearing on the petition in August 2015.

The family's DCF social worker noted that mother had last seen H.M. in November 2014, and since then had not responded to efforts to persuade her to re-engage with services. The social worker testified that mother had indicated that she could not spend time with H.M.

until she finished school, and that H.M. should be "adopted out." The social worker observed that mother had untreated mental health issues, had engaged in disruptive behaviors in various emergency housing placements, and had refused to engage in counseling. Based on mother's "extraordinarily unstable" behavior, the social worker did not believe that mother could safely care for the child. The social worker noted that H.M.'s foster mother was the only parent he had known, that he was thriving in her care, and that he was very attached to her. She also noted that H.M. had a physical condition which had required surgery and would continue to require special medical care, and that the foster mother had been "phenomenal" at meeting his needs.

Mother testified that she was attending classes on-line through a school in New York, and that she could not care for H.M. until she finished in January 2016, when she planned to move to Tennessee to look for government-related work. H.M.'s foster mother testified that H.M. was well-adjusted to his foster family, and was progressing well medically. She indicated that she was in a position to adopt if the petition was granted.

At the end of the hearing, the court entered findings and conclusions on the record, and also issued a subsequent written decision. The court found that mother had no relationship with H.M., indeed that she had effectively abandoned him, having failed to engage in any visits with the child after he was little more than a month old. Mother failed to respond to DCF's efforts to re-engage with services, indicated that she thought H.M. should be adopted, and continued to maintain that she could not parent him until January 2016. She had played essentially no constructive role in his life. In the meantime, H.M. had become bonded with his foster mother and family, where his needs had been well attended and he was thriving. The court concluded that mother could not resume parenting within a reasonable time, noting that she had been absent from any caregiving role or training for an extended time; that there was serious doubt whether she could be in a position to parent H.M. even as early as January 2016, when she claimed to be able to resume parenting; that H.M had been in DCF custody for most of his life; and that there was a critical need for him to achieve permanence as soon as possible. Accordingly, the court concluded that a termination of mother's parental rights was in the best interests of the child. This appeal followed.

On appeal of a termination-of-parental rights order, we will uphold the family court's factual findings unless clearly erroneous, and its conclusions if reasonably supported by the findings. In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29. The court may terminate parental rights at the initial disposition stage if it determines by clear and convincing evidence that termination is in the child's best interests. Id.

Mother asserts that the court improperly failed to make findings and conclusions regarding the causes of the CHINS adjudication that needed to be remedied within a reasonable time. More specifically, she asserts that the principal cause was mother's unaddressed mental health needs, and that the court's findings in this regard were inadequate. The record does not support this claim. As noted, mother's effective abandonment of H.M. was the principal basis of the CHINS adjudication, and her extended absences and failure to visit the child or to engage in services; her acknowledged inability to care for the child before January 2016 at the earliest; and the child's critical need for permanence after nearly a year in State custody with no parental contact, formed the basis of the court's conclusion that mother could not resume parental responsibilities within a reasonable time. See id. (observing that reasonableness of time period for resuming parental rights and responsibilities must be "measured from the perspective of the child's needs"). The court's recognition of mother's "apparent mental health issues," although

2

adequately supported by the social worker's testimony and observations, received scant mention in the court's analysis of H.M.'s best interests and did not form a material part of the court's decision. Accordingly, we find no error, and no basis to disturb the judgment. See In re A.F., 160 Vt. 175, 178-79 (1993) (noting that even erroneous finding will not require reversal where other evidence and findings amply support termination of parental rights).

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice